UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
:
In re                                        : Chapter 11 Cases No.
:
EMPIRE ONE TELECOMMUNICATIONS,               : 01-11894 (AJG)
    INC., et al.,                       :
        Debtors.                         : (Jointly Administered)
:
:
------------------------------------------------------------- x

**MOTION UNDER 11 U.S.C. §§ 105, 362(d),
364(c)(1), 364(c)(2), 364(c)(3) AND 364(d)(1) AND
BANKRUPTCY RULES 4001(c) AND 9014 FOR ORDERS
(A) SCHEDULING HEARINGS ON SHORTENED NOTICE,
AND (B) AUTHORIZING DEBTORS TO OBTAIN INTERIM AND FINAL
FINANCING ON A SUPER-PRIORITY AND SECURED BASIS**

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

        Empire One Telecommunications, Inc., Sonus Communications, Inc., Empire One Power, Inc., and EOT Telecommunications of Canada, Inc. (collectively, the "Debtors"), by their attorneys, LeBoeuf, Lamb, Greene & MacRae, L.L.P., make this motion (the "Motion") for orders pursuant to sections 105, 362(d), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (a) scheduling hearings on the Motion on shortened notice and (b) authorizing the Debtors to obtain interim and final financing under a post-petition credit facility (the "Credit Facility") with EOT Lending Corp. on a super priority and secured basis, and in support thereof, respectfully represent as follows:

## BACKGROUND

1. On April 2, 2001 (the "Commencement Date"), the Debtors commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2. An official committee of unsecured creditors was appointed in these cases on April 24, 2001.

3. The Debtors provide a diverse range of wholesale and retail integrated communications services, including standard voice telecommunications (local and long distance), dial-up and dedicated Internet access and specialized data services for commercial subscribers. The Debtors maintain Web portals in Chinese, Russian and English,. and their marketing, sales and customer services are provided in the languages of their target markets.

4. The filing of the Debtors' chapter 11 petitions was precipitated by a number of factors. The voice and data service technology employed by the Debtors, known as "Voice Over IP," did not command the degree of customer acceptance and demand as contemplated. This factor, coupled with increased competition and service outages, negatively impacted price of the service. In addition, the Debtors entered into agreements with several service providers at uneconomic terms, which has resulted in significant operating losses. The Debtors have had to absorb substantial write-downs of network equipment upon discontinuing service with these providers. The Debtors have been further burdened by considerable existing debt and the inability to obtain additional financing going

forward.

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

6. The Debtors request that, upon notice and hearing pursuant to Bankruptcy Rules 4001(c) and 9014, the Court approve the Credit Facility providing for postpetition financing of up to $600,000, to be extended to the Debtors upon Court approval of the same.

7. As set forth in the Affidavit of Frank C. Szabo, Chief Financial Officer of the Debtors, annexed hereto as Exhibit A (the "Szabo Affidavit"), the need for the proposed financing is urgent. The Debtors currently have insufficient working capital and liquidity to operate and remain viable throughout the next six months. Accordingly, the post-petition financing proposed under the Credit Facility will help ensure that the Debtors maintain sufficient working capital, and that the Debtors are able to continue normal operations in the coming months.

8. In addition, a number of the Debtors' competitors have recently announced their intentions to go out of business, providing the Debtors with an excellent, though short-lived, opportunity to expand its customer base. The Debtors need the proposed financing an expedited basis to take advantage of the opportunity to market themselves to these potential customers. Finally, the Debtors are currently in the process of determining which executory contacts and unexpired leases they plan to assume or reject, and the financing to be provided by the Credit Facility may enable the Debtors honor their obligations under the contracts and leases they seek to assume.

9. Accordingly, the Debtors respectfully request that the Court (a) schedule

hearings to consider approval of the Credit Facility on both an interim and final basis on shortened notice, (b) enter the order annexed hereto as Exhibit D (the "Interim Order"), approving the Credit Facility on an interim basis and (c) enter the order annexed hereto as Exhibit E (the "Final Order"), granting final approval of the Credit Facility.

## THE PROPOSED CREDIT FACILITY

10. The Debtors have aggressively sought, both pre-and postpetition, capital to finance their ongoing operations. Except for the Credit Facility described herein, the Debtors have been unable to obtain such financing. As described more fully in the Szabo Affidavit, the Debtors pursued other financing options before settling on the Credit Facility. The Debtors attempted to obtain financing from traditional sources, such as commercial banks, investment banks, institutional investors and a number of wealthy individual investors, but these efforts proved to be unsuccessful. Szabo Affidavit at 2-3.

11. After having pursued such financing options, the Debtors concluded that a lender would not extend postpetition financing to the Debtors without, at a minimum, requiring that its obligation have priority over all other administrative claims, as well as having a security interest on all of the Debtors' assets.

12. As a result of the foregoing, the Debtors have agreed to enter into the Credit Facility with EOT Lending Corp. ("EOT Lending"), which grants a first priority senior security interest on substantially all the assets of the Debtors, as well as a super-priority claim, under sections 364(c)(1) and (d)(1) of the Bankruptcy Code. EOT Lending is composed of nineteen individual and corporate investors, and was formed for the purpose of providing post-petition financing to the Debtors. Certain

members of EOT Lending are members of Quadrant Management, Inc. ("Quadrant"), an investment management company that owns and manages a portfolio of companies in the technology sector. Some of Quadrants' management team is currently on the Debtors' boards of directors, and has provided the Debtors with various consultation and advisory services since January 2001. Quadrant has in the past extended financing to the Debtors' non-debtor parent company, Sonus Communications Holdings, Inc. ("Sonus Holdings"). Quadrant currently holds a lien (the "Quadrant Lien") on the accounts receivable of Empire One Telecommunications, in the amount of $80,000, to secure financing extended to Sonus Holdings under an indenture executed on January 3, 2001. The Quadrant Lien is presently subject to a motion for approval of a cash collateral stipulation between the Debtors and Quadrant.

13. EOT Lending proposes to provide the Debtors with financing under the terms set forth in the Credit Facility and the Security and Pledge Agreement, copies of which are annexed hereto as Exhibits B and C respectively. The following is a summary of certain key provisions of the Credit Facility:

A. <u>Commitment and Availability</u>. As set forth above, the Credit Facility provides for post-petition financing of up to $600,000 which will be extended as interim financing upon Court approval of the same.

B. <u>Term</u>. The Credit Facility matures and must be repaid upon the earlier of (a) twelve (12) months from the date of draw or (b) the occurrence of an event of default.

C. <u>Interest</u>. The Debtors will pay interest under the Credit Facility at a rate of 16 percent per annum on all amounts due.

D. <u>Superpriority and Secured Claim</u>. The Credit Facility provides that

EOT Lending will receive a perfected lien on all of the property, real and personal, tangible and intangible, of the Debtors' estates (the "Collateral"), to secure the Credit Facility, as well as an administrative claim with priority pursuant to Bankruptcy Code section 364(c)(1) over any and all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), with the exception of certain Carve-Out Expenses (as defined in the Credit Facility), which will rank pari passu with such claim. 11 U.S.C. § 364(c)(1). The Credit Facility will be secured pursuant to Bankruptcy Code section 364(c) and (d) by a perfected first priority senior security interest in and lien upon the Collateral, with the exception of Collateral securing Permitted Liens (as defined in the Credit Facility), in which case the Lender's lien will be a second priority interest, junior only to such Permitted Liens, and subject, in each case, to the Carve-Out Expenses.

        E.      Placement fee. The Credit Facility provides for a placement fee to EOT Lending of three (3) percent of all sums borrowed to be paid at the time the loan is funded.

        F.      Other Conditions. The Credit Facility contains a number of conditions, including, inter alia, the requirement that the Debtors observe the budget annexed to the Credit Facility.

14. In light of the Debtors' limited post-petition financing options, the Debtors believe that the terms of the Credit Facility are fair, reasonable and in the best interests of the Debtors' estates and creditors.

15. Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this motion.

16. No previous application for the relief sought herein has been made by the Debtors to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court (i) schedule interim and final hearings on the Motion on shortened notice, (ii) enter the Interim Order, (iii) enter the Final Order and (iv) grant the Debtors such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 11, 2001

    LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.

By:   s/Timothy W. Walsh
    Timothy W. Walsh (TW-7409)
    Rosemary Scariati (RS-4181)
    125 West 55th Street
    New York, New York 10019
    (212) 424-8000

**ATTORNEYS FOR DEBTORS**

NYC 377324