**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  **x**
                                                                    **:**
In re:                                                              **:**  Chapter 11
                                                                    **:**  Case Nos. 01-11894,
                                                                    **:**  01-11896 through 01-11898
EMPIRE ONE TELECOMMUNICATIONS, INC.,                                **:**  and 02-11387  (AJG)
<u>et al</u>.,                                                      **:**
                                                                    **:**  (Jointly Administered)
                                          Debtors.                  **:**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  **x**


## PLAN OF REORGANIZATION OF EMPIRE ONE TELECOMMUNICATIONS, INC., SONUS COMMUNICATIONS, INC., EOT TELECOMMUNICATIONS OF CANADA, INC., EMPIRE ONE POWER, INC., AND SONUS COMMUNICATIONS HOLDINGS, INC. <u>DATED JUNE 28, 2002</u>

Empire One Telecommunications, Inc., Sonus Communications, Inc., EOT Telecommunications of Canada, Inc., Empire One Power, Inc., Sonus Communications Holdings, Inc., (collectively, the "Debtors") propose the following plan of reorganization (the "Plan") for the resolution of outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code.

The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  All holders of claims against and equity interests in the Debtors are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

**TABLE OF CONTENTS**

**Page**

ARTICLE I        DEFINITIONS ........................................................................................................1

ARTICLE II       TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY
                 TAX CLAIMS ...........................................................................................9

ARTICLE III      CLASSIFICATION AND TREATMENT OF CLAIMS AND
                 INTERESTS ............................................................................................10

ARTICLE IV       MEANS FOR IMPLEMENTATION OF PLAN ...........................................14

ARTICLE V        CONDITIONS PRECEDENT ....................................................................16

ARTICLE VI       EFFECTS OF PLAN CONFIRMATION ......................................................18

ARTICLE VII      MISCELLANEOUS PROVISIONS ...........................................................22

# ARTICLE I

## DEFINITIONS

Unless this Plan expressly provides or the context requires otherwise, all capitalized terms used in this Plan shall have the meanings assigned to them in this Article I. Whenever the context requires, terms used in the Plan shall include the plural as well as the singular. A term used in the Plan and not defined in the Plan has the meaning, if any, given in the Bankruptcy Code or the Bankruptcy Rules.

1.    <u>Administrative Claim</u>. "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtors' Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Case, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 330(a) or 331, and all fees and charges assessed against the Estate of the Debtors under chapter 123 of title 28 of the United States Code.

2.    <u>Allowed Administrative Claim</u>. "Allowed Administrative Claim" means all or that portion of any Administrative Claim which either (a) has become allowed by a Final Order or (b) was incurred by the Debtors in the ordinary course of business during the Case and is due and owing under the terms and conditions of any agreements or applicable law.

3.    <u>Allowed Claim</u>. "Allowed Claim" means a Claim against the Debtors, other than an Allowed Administrative Claim, (a) either (i) having been scheduled by the Debtors pursuant to the Bankruptcy Code, other than a Claim scheduled as disputed, contingent, or unliquidated, or (ii) proof of which has been timely filed with the Court pursuant to the

Bankruptcy Code and any order of the Court, or late filed with leave of the Court after notice and a hearing, and (b) either (x) no objection to the allowance of which has been filed within the periods of limitation, if any, fixed by an order of the Court, or (y) any objection to the allowance of which has been overruled by a Final Order, or (z) which has otherwise been allowed by a Final Order.  "Allowed Claim" shall not include (1) any Claim for prepayment premiums or penalties or interest attributable to default or penalty rates, except as expressly permitted by the Plan; (2) unmatured or unearned interest as of the Petition Date, except as expressly permitted by the Bankruptcy Code or the Plan; (3) any amount in excess of an amount allowed by the Court pursuant to Bankruptcy Code section 502(c); (4) any Claim of any entity from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553, or that is a transferee of a transfer avoidable under Bankruptcy Code sections 544, 545, 547, 548, or 549, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550, or 553; or (5) any Claim of any entity from which property was recoverable under Bankruptcy Code sections 542, 543, 550, or 553, or that was a transferee of a transfer avoidable under Bankruptcy Code sections 544, 545, 547, 548, or 549, regardless of any applicable period of limitation, to the extent of the amount for which such entity would have been liable or required to pay or the value of the property which such entity would have been required to turn over or pay under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550, or 553.

4.    <u>Allowed Interest</u>.  "Allowed Interest" means  an Interest that is not a Disputed Interest or one that has been allowed by a Final Order.

5.    <u>Allowed Priority Claim</u>.  "Allowed Priority Claim" means all or the portion of any Priority Claim which is or has become an Allowed Claim.

6. <u>Allowed Priority Tax Claim</u>. "Allowed Priority Tax Claim" means all or that portion of any Priority Tax Claim which is or has become an Allowed Claim.

7. <u>Available Cash</u>. "Available Cash" means the Debtors' "cash on hand", other than the Exit Financing, as of the Effective Date.

8. <u>Bankruptcy Code</u>. "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter applicable to the Case.

9. <u>Bankruptcy Rules</u>. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Court, as applicable to the Case.

10. <u>Bar Date Order</u>. "Bar Date Order" means the Order Establishing Bar Date for Filing of Proofs of Claim entered by the Court on **August 20, 2001**.

11. <u>Business Day</u>. "Business Day" means any day except Saturday, Sunday, or any other day on which commercial banks in New York are authorized by law to close.

12. <u>Capital Event</u>. "Capital Event" means a sale of the substantially all of the Reorganized Debtor's assets.

13. <u>Cases</u>. "Cases" means these reorganization cases under Chapter 11 commenced on April 2, 2001 under Case Nos. 01-11894 and 01-11896-01-11898, and the case of Sonus Communications Holdings, Inc. commenced on March 26, 2002 under Case No. 02-11387.

14. <u>Cash</u>. "Cash" means cash and cash equivalents including, without limitation, checks and wire transfers.

15. <u>Cash Management System Order</u>. "Cash Management System Order" means the Order Approving Cash Management Systems of the Debtors, entered by the Court on April 4, 2001.

16.     Chapter 11.  "Chapter 11" means Chapter 11 of the Bankruptcy Code.

17.     Claim.  "Claim" means a claim (as defined in the Bankruptcy Code) against the Debtors, whether or not asserted.

18.     Class.  "Class" means a class of Claims or Interests as classified and described in Article III of the Plan.

19.     Confirmation.  "Confirmation" means the signing of the Confirmation Order by the Court.

20.     Committee.  "Committee" means the official committee of unsecured creditors appointed in these cases on April 24, 2001.

21.     Confirmation Date.  "Confirmation Date" means the date on which the clerk of the Court enters the Confirmation Order on the Court's docket.

22.     Confirmation Order.  "Confirmation Order" means the order entered by the Court confirming the Plan in accordance with Chapter 11.

23.     Consummation Date.  "Consummation Date" means the date on which a final decree is entered.

24.     Court.  "Court" means the United States Bankruptcy Court for the Southern District of New York, the United States District Court for the Southern District of New York and/or the Second Circuit Court of Appeals, as applicable.

25.     Debenture.  "Debenture" means the Senior Convertible Debenture executed between the Reorganized Debtor and EOT Lending Corp. in the amount of $1.7 million and includes the converted DIP Loan and Exit Financing.

26.     Debtors.  "Debtors" means Empire One Telecommunications, Inc., Sonus Communications, Inc., EOT Telecommunications of Canada, Inc., Empire One Power, Inc., and

Sonus Communications Holdings, Inc., whether as debtors or as debtors in possession, and includes the Debtors' Estates, where appropriate.

27. <u>Disallowed Claim</u>. "Disallowed Claim" means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason. "Disallowed Claim" shall also have the meaning specified in Article VII of the Plan.

28. <u>Disbursing Agent</u>. "Disbursing Agent" means the Debtors and/or their duly appointed agent or agents.

29. <u>Disclosure Statement</u>. "Disclosure Statement" means the disclosure statement for this Plan to be approved by the Court pursuant to Bankruptcy Code section 1125.

30. <u>Disputed Claim</u>. "Disputed Claim" means that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim), either that is listed in the Debtors' schedules of liabilities as disputed, contingent, or unliquidated, or that is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount, that is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court, or as to which an objection has been filed, and that has not become an Allowed Claim.

31. <u>Distribution Record Date</u>. "Distribution Record Date" means the Effective Date.

32. <u>Effective Date</u>. "Effective Date" means a Business Day selected by the Debtors (written notice of which shall be filed with the Court) which is, unless the Court after Confirmation enters an order fixing a later date, not more than thirty (30) Business Days after the

date on which each of the conditions to the Plan's Effective Date set forth in Article V of the Plan has either been satisfied or waived in accordance with the Plan.

33.     <u>EOT Lending Corp</u>. "EOT Lending Corp." means DIP Lender.

34.     <u>ERISA</u>.  "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

35.     <u>Estates</u>.  "Estates" means the estates created by the Debtors' Cases pursuant to section 541 of the Bankruptcy Code.

36.     <u>Exit Financing</u>.  "Exit Financing" means the payment made by Empire One Lending, Inc. to the Debtors, in the amount of $500,000, in connection with the DIP Loan.

37.     <u>Face Amount</u>.  "Face Amount" means the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the Claims Bar Date or otherwise deemed timely filed under applicable law if the proof of Claim specifies only a liquidated amount.

38.     <u>Fee Claim</u>.  "Fee Claim" has the meaning ascribed to that term in Article IV of the Plan.

39.     <u>Final Order</u>.  "Final Order" means an order or judgment of the Court as to which (a) any appeal or petition for review or rehearing that has been taken has been finally determined or dismissed or (b) the time for appeal has expired and no notice of appeal or petition for review or rehearing has been filed.

40.     <u>Holdings</u>.  "Holdings" means Sonus Communications Holdings.

41.     <u>Holdings Petition Date</u>.  "Holdings Petition Date" means March 26, 2002.

42.     <u>Insider</u>.  "Insider" has the definition ascribed to it under the Bankruptcy Code.

43. <u>Interest</u>.  "Interest" has the meaning ascribed to the term "equity security" under the Bankruptcy Code.

44. <u>IRS</u>.  "IRS" means the United States Internal Revenue Service.

45. <u>Pension Benefits</u>.  "Pension Benefits" means insurance or medical benefits payable after retirement to a former employee of the Debtors who retired or an employee of the Debtors who is eligible to retire on or before the Effective Date or who retires after the Effective Date and is otherwise entitled to such benefits.

46. <u>Person</u>.  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtors.

47. <u>Petitions</u>.  "Petitions" means the voluntary petitions filed on April 2, 2001 pursuant to Chapter 11 of the Bankruptcy Code by the Debtors and the Petition of Sonus Communications Holdings, Inc. filed on March 26, 2002.

48. <u>Petition Date</u>.  "Petition Date" means April 2, 2001 for the Debtors except for Holdings.

49. <u>Plan</u>.  "Plan" means this Plan of Reorganization, as altered, modified, or amended in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

50. <u>Priority Claims</u>.  "Priority Claims" means a Claim entitled to priority under Bankruptcy Code Sections 507(a)(3), 507(a)(4) or 507(a)(6).

51. <u>Priority Tax Claim</u>.  "Priority Tax Claim" means a Claim entitled to priority under Bankruptcy Code section 507(a)(7) if allowed.

52.    <u>Professionals</u>.  "Professionals" means all professionals employed in the Reorganization Case pursuant to section 327 or 1103 of the Bankruptcy Code.

53.    <u>Quadrant</u>.  "Quadrant" means Quadrant Management Corp.

54.    <u>Reinstated or Reinstatement</u>.  "Reinstated or Reinstatement" means rendering a Claim or Interest unimpaired pursuant to section 1124 of the Bankruptcy Code.

55.    <u>Reorganization Cases</u>.  "Reorganization Cases" means the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

56.    <u>Restructuring Transactions</u>.  "Restructuring Transactions" means the transactions contemplated in connection with the Exit Financing.

57.    <u>Secured Claim</u>.  "Secured Claim" means a Claim of a creditor that is secured by property of the Debtors' Estates, to the extent of the value of the creditor's interest in the estate's interest in such property, as provided in Bankruptcy Code section 506(a).  "Secured Claim" also means a Claim of a creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a).

58.    <u>Solvent</u>.  "Solvent" means not insolvent as insolvency is defined in section 101(32) of the Bankruptcy Code.

59.    <u>Trade Claim</u>.  "Trade Claim" means a Claim by a Person, other than a governmental unit, government (or agency or political subdivision thereof), that supplied goods or services to the Debtors other than as an employee or retiree of the Debtors.

60.    <u>Unsecured Claim</u>.  "Unsecured Claim" means a Claim that is not secured by property of the Debtors' Estates or otherwise entitled to treatment as a secured claim under

Bankruptcy Code section 506, is not an Administrative Claim, is not a Priority Tax Claim, and is not otherwise entitled to priority under Bankruptcy Code sections 503 or 507.

61. <u>Unsecured Creditors</u>. "Unsecured Creditors" means all entities possessing Unsecured Claims.

62. <u>Unsecured Deficiency Claim</u>. "Unsecured Deficiency Claim" means any portion of a Claim to the extent that the value of the Claim holder's interest in the Estate's interest in any property securing the Claim is less than the amount of the Claim, or to the extent that the amount of any Claim subject to setoff is less than the amount of such Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

63. <u>Vendor Claim</u>. "Vendor Claim" means Trade Claim.

64. <u>Voting Deadline</u>. "Voting Deadline" mean 5:00 p.m., Eastern Standard Time, or Daylight Savings Time, as applicable, on _____, 2002.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

65. <u>Administrative Claims</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are treated as described in this section of the Plan. Except as otherwise provided in the Plan, by agreement of the holder of an Allowed Administrative Claim to different treatment, or by order of the Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim which has come due for payment under any applicable order or law on or within ten (10) Business Days after the later of the Effective Date and the date on which such Person becomes the holder of such an Allowed Administrative Claim. Notwithstanding and in lieu of the foregoing treatment of Allowed Administrative Claims, payments for Fee Claims may be made in accordance with any order of the Court.

66.  <u>Priority Tax Claims</u>.  Allowed Priority Tax Claims shall be paid by the Debtors.  Unless otherwise agreed by the parties, any Person holding an Allowed Tax Claim will receive  payment in Cash in full on the later of the Effective Date or allowance of the Claim.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

67.  <u>Classification and Specification of Treatment of Claims and Interests</u>.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes of Claims and Interests, pursuant to Bankruptcy Code section 1123(a)(1). This section specifies the treatment of such Classes of Claims and Interests and of their impaired or unimpaired status, pursuant to Bankruptcy Code sections 1123(a)(2) and (3).  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, withdrawn, waived, settled, or otherwise satisfied. Unless the Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and distribution.

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the following treatment.  The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including without limitation payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Plan will not provide any

distributions on account of a Claim or Interest, the payment of which has been assumed by a third party. Except as otherwise provided in the Plan or by further order of the Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Court shall not be impaired by the Plan, the rights of the holders of such Claims as provided in such orders shall not be altered by the Plan, and the holders of such Claims and the parties to such contracts shall retain such rights and shall receive such treatment as provided in such orders in lieu of any other treatment provided in the Plan, including without limitation the following: prepetition Claims that have been paid or settled, postpetition claims, with Court authorization, provided that the Plan may discontinue such payments; and settlements or compromises of Claims and Interests. Any holder of any Claim in any Class may agree, pursuant to Bankruptcy Code section 1123(a)(4), to a treatment of such Claim that is less favorable than any other Claim in such Class.

Classes of Claims

Secured Claims.

Except as set forth below, holders of Class 1 and 2 Allowed Secured Claims will be paid in full in Cash on the later of the Effective Date or the date on which there is a Final Order allowing such Claims.

Class 1. This Class is impaired. This Class consists of all Allowed Secured Claims against the Debtors for federal, state and local taxes. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Claim in this Class, each holder of an Allowed Secured Claim in this Class shall receive Cash payments totaling at least the Allowed amount of its Claims, possessing a value, as of the Effective Date, equal to the full value of the Allowed Secured Claim, on the later of (i) the Effective Date or (ii) the date on

which there is a Final Order Allowing such Claim. The Debtors estimate that there will not be any Allowed Secured Claims in Class 1.

<u>Class 2.</u>          This Class is impaired. This Class consists of all Allowed Secured Claims against the Debtors representing setoff rights. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Claim in this Class, each Allowed Secured Claim in this Class shall be paid in full on the later of (i) the Effective Date or (ii) the date on which there is a Final Order Allowing such Claim. The Debtors estimate that there will not be any Allowed Secured Claims in Class 2.

<u>Class 3.</u>          This Claim is impaired. This claim consists of the Allowed Secured Claim of EOT Lending Corp. under the terms of the DIP Loan, which DIP Loan is secured by a first priority senior security interest in and lien of all the property, real and personal, tangible and intangible of the Debtors. An allowed claim in this Class will receive ninety percent (90%) of the shares of the Reorganized Debtor. Pursuant to an agreement between EOT Lending Corp. and the senior management of the Debtors, EOT Lending Corp. will distribute 20% of its total shares of the Reorganized Debtor to senior management. Such equity is provided as a means to incentivize the senior management to continue their employment with the Reorganized Debtor. The Debtors estimate that the Allowed Claims of Class 3 total $1.2 million.

<u>Class 4.</u>          This Class is impaired. This Class consists of the claim of Quadrant under the Debenture, which claim is secured by a security interest and lien on the Debtors' accounts receivable. An Allowed Claim in this Class will receive ten percent (10%) of the shares of the Reorganized Debtor. The Debtors estimate that the Allowed Claims of Class 4 total $80,000.

Priority Claims Under Bankruptcy Code Sections 507(a)(3), 507(a)(4) or 507(a)(6).

Class 5. This Class is impaired. This Class consists of all Allowed Unsecured Claims against the Debtors that are specified as having priority in Bankruptcy Code sections 507(a)(3), 507(a)(4) or 507(a)(6), if any such Claims still exist as of the Effective Date. Unless the holder of a particular Claim agrees to a less favorable treatment, each Allowed Claim under Bankruptcy Code sections 507(a)(3), 507(a)(4) or 507(a)(6), which has not been satisfied as of the Effective Date, shall be paid in full in Cash on the later of (i) the Effective Date or (ii) the Date on which there is a Final Order allowing such Claim. The Debtors estimate that there will not be any Allowed Claims in Class.

Unsecured Claims Without Priority.

Class 6. This Class is impaired. This Class consists of all Allowed Unsecured Claims, including, without limitation, Vendor and Trade Claims, Allowed Unsecured Claims arising from rejected executory contracts and unexpired leases. Unless otherwise agreed by the holders of the Allowed Unsecured Claims in this Class, each holder of an Allowed Unsecured Claim in this Class shall receive Cash payments totaling its pro rata share of the distributions to the holders of all Allowed Unsecured Claims. The holders of Allowed Unsecured Claims will be entitled to pro rata cash distributions on the following terms: (a) five percent (5%) dividend on the Effective Date; and (b) seven percent (7%) dividend on the eighteen (18) month anniversary of the Effective Date or upon the Reorganized Debtor achieving quarterly EBITDA of $100,000 whichever occurs first. The Class will also receive a "no cost option" of three percent (3%) of the Reorganized Debtor's equity upon a Capital Event within five (5) years of the Effective Date. The Debtors estimate that the total Allowed Claims in this Class will be $3.1 million and that such holders will receive at least twelve percent (12%) of their Allowed Claims.

Interests.

Class 7. This Class is impaired. This Class consists of the Interests of all the Debtors on the Petition Date. As of the Effective Date, all Interests in the Debtors shall be expunged and the holders of such Interests will not receive any distribution on account of such Interests.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF PLAN

a. The Restructuring Transactions. The Restructuring Transactions pursuant to which the Plan shall be implemented include settlements with one of the Debtors' key vendors, Global Crossing, to secure better terms, obtaining Exit Financing from EOT Lending Corp., and distributing equity in the Reorganized Debtor.

b. Dissolution of the Debtors. From and after consummation of the Plan, EOT will become the Reorganized Debtor. The Debtors will take such actions as may be necessary or appropriate to implement EOT as the Reorganized Debtor and to dissolve and terminate the remaining Debtors' corporate existence. To the extent required by applicable nonbankruptcy law, the Debtors will execute and deliver a certificate of dissolution and such other documents that may be required by law containing terms that are consistent with the terms of the Plan and that satisfy all such applicable requirements of law. The Debtors also will take all such other actions as may be necessary or appropriate to effectuate the dissolution and terminate its corporate existence.

68. Corporate Documents, Employment Related Agreements and Compensation Programs.

a. Agreements, Instruments, and Documents. All agreements, instruments, and documents required under the Plan to be executed or implemented, together

with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

b. <u>Pre-Bankruptcy Employment Related Agreements and Compensation Programs</u>. As of the Effective Date, all employment, retirement, indemnification, employee benefit, Pension Benefit, profit-sharing and related plans or agreements, whether or not qualified under ERISA, that were in effect on the Petition Date and that have not previously been terminated or superceded, will be terminated and deemed rejected.

c. <u>Corporate Action</u>. All matters provided under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by directors of the Debtors.

69. <u>Plan Distributions</u>. All cash necessary for the Debtors to make payments pursuant to the Plan shall be obtained from the Debtors' Available Cash and Exit Financing.

70. <u>Preservation of Rights of Action</u>. In accordance with section 1123(b) of the Bankruptcy Code, the Debtors may enforce any claims, rights and causes of action that they or the Estates may hold against any entity.

71. <u>Bar Date for Certain Fee Claims</u>. Each Person retained or requesting compensation in the Cases, pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), and 1103, shall be entitled to file with the Court an application for allowance of interim or final compensation and reimbursement of expenses in the Case through the Confirmation Date ("Fee Claims") until not later than thirty (30) days after the mailing of notice of Confirmation.  All such Fee Claims for which an application is not timely filed shall be forever barred.  Objections

to each such application may be filed on or before twenty (20) days after such application is filed. The Court shall determine all such Fee Claims.

72. <u>Bar Date for Other Administrative Claims</u>. Unless the Plan or the Court fixes a different date, all Claims against the Debtors for Administrative Claims shall be filed not later than thirty (30) days after the Effective Date. All such Claims not timely filed shall be forever barred. The Debtors and any other party in interest, may object to the allowance of any such Claim filed before, on, or after the Effective Date.

73. <u>Further Authorization</u>. The Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings from the Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Court shall retain jurisdiction to enter such orders, judgments, injunctions, and rulings.

## ARTICLE V

## CONDITIONS PRECEDENT

74. <u>Conditions to Confirmation</u>. Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for Confirmation of the Plan with respect to the Debtors shall have been satisfied. In addition, Confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

75. <u>Waiver and Nonfulfillment of Conditions to Confirmation</u>. Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtors. In the event that the Debtors determine that the conditions to the Plan's Confirmation which it

may waive cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

76. <u>Confirmation Order Provisions for Pre-Effective Date Actions</u>. The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

77. <u>Conditions to Effective Date</u>. The following are conditions precedent to the Effective Date of the Plan. The Plan will be null and void and of no force and effect and will be deemed withdrawn unless they are each satisfied or waived in accordance with the Plan:

a. The Court shall have entered the Confirmation Order which shall have become a Final Order and which order shall, among other things provide all conditions for funding, settlement and dissolution of the respective Debtors.

b. No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made and still be pending.

78. <u>Waiver and Nonfulfillment of Conditions to Effective Date</u>. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtors. In the event that the Debtors determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

79.     Effective Date Events.  On the Effective Date, the following actions shall
have taken place and shall, to the extent necessary for any purpose, be deemed to have occurred
in the following order:

a.      The Debtors' settlement with Global Crossing is approved;

b.      All payments to be made on the Effective Date and all other
actions to be taken on or before the Effective Date pursuant to this Plan by the Debtors shall be
made or taken or duly provided for;

c.      The execution of any documents, including orders or agreements,
necessary to implement the Plan as of the Effective Date; and

d.      All other events and actions specified in the Plan to occur on the
Effective Date.

## ARTICLE VI

## EFFECTS OF PLAN CONFIRMATION

80.     Satisfaction of Claims and Interests.  Holders of Claims and Interests shall
receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all
such Claims, and any interest accrued thereon, and all such Interests.

81.     Release. Except as otherwise provided in the documents relating to the
Debenture, or with respect to any Person in any document executed by such Person
contemplating the transactions described in the Plan, the Debtors, including their respective
current and former officers, directors, shareholders and their respective employees and agents,
and their respective counsel and advisors, together with all of their current and former officers
and directors (collectively, the "Plan Releasees"), are released and discharged from any and all
claims or liabilities arising from actions taken in their capacity as current or, if applicable, former
officers,  directors, employees, agents, counsel and advisors of the Debtors, and from any and all

claims, obligations, rights, causes of action and liabilities relating to the Debtors, the Reorganization Case or the Plan. The Plan Releasees are released and discharged from any and all claims, obligations, rights, Causes of Action and liabilities which any holder of a Claim or Equity Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission or other occurrence taking place on or at any time prior to the Effective Date in any way relating to the Debtors, the Reorganization Cases or the Plan. Each holder of a Claim shall be deemed to have agreed to the foregoing provisions of the Plan, shall be bound thereby, by reason of, among other things, its acceptance of the Plan and its receipt of any distributions under the Plan.

82. <u>Vesting</u>. Except as otherwise expressly provided in the Plan or the Confirmation Order, property of the Debtors' Estate swill vest in the Debtors, free and clear of all Claims, liens, encumbrances, charges and other Interests of creditors and Interest holders.

83. <u>Abandoned Property</u>. Any and all property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code: shall remain abandoned forever; shall not thereafter be deemed to be property of the Debtors or of any successor to the Debtors; shall not at any time re-vest in the Debtors, and shall not otherwise, whether by conveyance or otherwise, ever become the property of the Debtors.

84. <u>Post-Effective Date Effect of Evidences of Claims or Interests</u>. Notes, shareholder certificates, and other evidences of liens or Claims against or Interests in the Debtors shall, effective upon the Effective Date, represent only the right to participate in the distributions or rights, if any, contemplated by the Plan.

85. <u>Surrender of Instruments and Release of Liens</u>. Except as otherwise provided in the Plan or the Confirmation Order, each holder of an instrument evidencing a Claim

against the Debtors or any of the property of the Debtors shall surrender such instrument to the Disbursing Agent shall distribute to the holder thereof the distributions provided for in the Plan. No distribution under the Plan shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the non-availability of such instrument is established to the satisfaction of the Debtors. Each Person who is to receive distributions under the Plan in complete satisfaction of a Secured Claim shall not receive such distributions until such creditor executes the release of its liens (in recordable form if requested by the Disbursing Agent) and delivers the release to the Disbursing Agent. Any such Person who fails to surrender such instrument or satisfactorily explain its non-availability or execute and deliver such release of liens within ten (10) days of the date such surrender, explanation, execution, or delivery is requested by the Disbursing Agent shall be deemed to have no further Claim against or Interest in the Debtors or property of the Debtors and/or the Disbursing Agent, shall not participate in any distribution under the Plan, and in such event upon ex parte motion of the Reorganized Debtor and/or the Disbursing Agent accompanied by appropriate evidence of such failure by affidavit or otherwise, the Court may enter an order requiring the act to be done at the cost of such Person by the Debtors and providing that such act when so done shall have like effect as if done by such Person or any other appropriate order.

86. <u>Term of Stays</u>. Except as otherwise provided in the Plan, the stay provided for in the Cases pursuant to Bankruptcy Code section 362, shall remain in full force and effect until the Effective Date.

87. <u>Post-Confirmation Date Employment and Payment of Professionals</u>. On and after the Confirmation Date, the Reorganized Debtor may pay Professionals for services to be performed after the Confirmation Date on a monthly basis without prior approval of the

Court; provided, however, that such payments for services or expenses incurred prior to the Effective Date shall be disclosed to the Court and shall be subject to the Court's final approval as reasonable. On motion and such notice as may be appropriate, the Court shall determine the reasonableness of such payments.

88.     <u>Retention of Jurisdiction</u>.  Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in this Plan, and including, without limitation, the following: to allow, disallow, reconsider (subject to Bankruptcy Code section 502(j) and the applicable Bankruptcy Rules), estimate, liquidate, classify, or determine any Claim against the Debtors, including Fee Claims or other Claims for compensation or reimbursement; to hear and determine all Claims, adversary proceedings, applications, motions, and contested or litigated matters arising under the Bankruptcy Code or arising in or related to the Case that are filed or commenced before or after the Confirmation Date or pursuant to the Plan and to adjudicate and enforce claims or causes of action of the Debtors arising under the Bankruptcy Code or arising in or related to the Case, whether or not pending on the Confirmation Date; to resolve controversies and disputes regarding interpretation and implementation of the Plan; to enter orders in aid of or to interpret the Plan, including, without limitation, appropriate orders (which may include contempt or other sanctions) to enforce the Plan, and to protect the Debtors and any other entity having rights under the Plan as may be necessary to implement the Plan, to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; to modify the Plan as provided by applicable law; to determine all questions and disputes regarding title to assets of the Debtors or of the Debtors' Estates, as

may be necessary to implement the Plan; to enforce and to determine actions and disputes concerning the releases, contemplated by the Plan and to require Persons holding liens to release liens in compliance with the Plan; to fix the value of collateral in connection with determining Claims; to enter any order pursuant to Bankruptcy Code section 505 or otherwise to determine any tax of the Debtors, whether before or after Confirmation, including to determine any and all tax effects of the Plan; and to enter a final decree closing the Case and making such final administrative provisions for the Case as may be necessary or appropriate.

89.     _Dissolution of the Committee._  As of the Effective Date, the Committee will be dissolved without prejudice to be reappointed at some later date if necessary.

MISCELLANEOUS PROVISIONS

90.     _Executory Contracts and Unexpired Leases._  Each executory contract or unexpired lease of the Debtors that has not previously been rejected by the Debtors is deemed rejected.  Nothing in this Plan, any attachment thereto, any document executed or delivered in connection with the Plan, shall be deemed to create any obligation or liability with respect to any executory contract or unexpired lease on the part of the Debtors or other Person that is not presently liable thereon.

91.     _Rejection Damages._  Any Claim for damages arising from the rejection, under this Plan, of an executory contract or unexpired lease, must be filed with the Court within thirty (30) days after the mailing of notice of Confirmation or be forever barred from receiving any distribution under the Plan.

92.     _Claims Arising from Certain Judgments._  A Claim that arises in favor of an entity as a result of a judgment in favor of the Debtors for the recovery of money or property from that entity or avoiding the entity's interest in property, shall be filed within thirty (30) days

after the later of (a) the date the judgment becomes final or (b) the mailing of a notice of Confirmation.

93. <u>Retention and Enforcement of Claims</u>. The Debtors shall retain and may enforce all claims, interests, and causes of action of the Debtors' Estates which have not been settled or adjudicated prior to the Effective Date, including without limitation all claims and causes of action to recover money or property and to determine the validity, extent or priority of a lien or other interest in property whether arising under bankruptcy law or nonbankruptcy law and whether or not commenced prior to the Confirmation Date. All such claims and causes of action of the Debtors against any Person, at their option, may be used to offset any payment or distribution due to such Person under the Plan.

94. <u>Objections to Claims and Interests</u>. The Debtors and any other party in interest may object to the allowance of any Claim or interest before, on, or after the Confirmation Date as applicable.

95. <u>Distributions Under the Plan</u>. Except as otherwise provided in the Plan, in the Confirmation Order, or in any Order of the Court in aid of consummation of the Plan, the following provisions shall govern distributions pursuant to the Plan:

a. <u>Provisions for Distributions Pending Determination of Certain Claims for Income Taxes</u>. Notwithstanding any other provision of the Plan, and unless the Court orders otherwise, prior to making distributions on account of Allowed Claims other than Administrative Claims and Priority Tax Claims, the Debtors shall make adequate provision for the satisfaction of Claims for income taxes entitled to treatment as administrative expenses; provided, however, that unless otherwise ordered by a court, the Debtors shall have no obligation

to withhold funds, designate reserves, or make other provisions for the payment of any Claims for taxes that have been disallowed by order of the Court.

b.    <u>No Distributions on Account of Claims that have not Become Allowed Claims</u>.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim, except that the entity responsible for distribution may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

c.    <u>Reserves for Claims that have not Become Allowed Claims</u>. Distributions on account of Claims that have not become Allowed Claims shall be governed by the following provisions:

(1)    The Debtors shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by a Final Order of the Court.

(2)    Except as otherwise provided in the Plan, the Debtors shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by an Order of the Court that has not become a Final Order as of any applicable time for distribution under the Plan, unless the Court orders otherwise or unless the Court's order of disallowance has been stayed.

(3)    With respect to Claims that have not become Allowed Claims and that are not governed by subparagraph (1) or subparagraph (2) above, the Debtors shall reserve a sufficient amount of consideration to allow for a distribution on account of the face amount of such Claims or as otherwise provided pursuant to any order of the Court with respect to the amount, if any, to be reserved; provided, however, that the Debtors shall distribute

consideration attributable to any undisputed portion and shall withhold the remainder. The Court may, after notice and a hearing (as defined in Bankruptcy Code section 102), fix a lesser amount than the face amount as the amount on account of which consideration shall be withheld. In the case of Claims not stating an amount, the Debtors or any holder of such Claims may request that the Court, after notice and a hearing (as defined in Bankruptcy Code section 102), determine an amount. Cash withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds. Such consideration will be released when and if Claims are allowed for less than the amount in reserve and distributed to creditors in accordance with the Plan.

        d.    <u>Persons Responsible for Distribution of Plan Consideration</u>. The Debtors, through its Disbursing Agent, shall disburse all consideration to be distributed under the Plan.

        e.    <u>Unclaimed Cash</u>. If any Person entitled to receive Cash under the Plan cannot be located on the date a distribution under the Plan is due, such Cash will be set aside and held in a segregated, interest-bearing fund to be maintained by the entity responsible for such distributions under the Plan. If such Person is located within ninety (90) days of the Effective Date, such Cash, together with any interest earned thereon, will be paid to such Person. If such Person cannot be located within ninety (90) days of the Effective Date, any such Cash and accrued interest thereon may be distributed to creditors holding Allowed Claims. Nothing contained in this Plan shall require the Debtors and/or the Disbursing Agent to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Debtors and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtors and/or the Disbursing Agent.

f.     Unnegotiated Items.  Checks or drafts issued to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter.

g.     Fractional Dollars.  Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

h.     Distribution Dates.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code section 102) to affected parties.

i.     Bankruptcy Code Sections 508, 509, and 510.  Distributions under the Plan will be governed by the provisions of Bankruptcy Code sections 508, 509, or 510 where applicable.

j.     Distributions to be Applied First to Administrative and Priority Claims.  Any distribution under the Plan by the Debtors and/or the Disbursing Agent on account of any Allowed Claim for which the Debtors are liable under any applicable law or order of the Court shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Claims of the recipient against the Debtors which are entitled to priority under Bankruptcy Code sections 503 or 507 and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

k.     <u>Orders Respecting Claims Distribution</u>. After Confirmation of the Plan, the Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

96.     <u>Setoffs</u>. The Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim, the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claims, rights and causes of action that the Debtors may possess against such holder.

97.     <u>Limitation of Liability</u>. The Debtors and their directors, officers, trustees, employees and professionals (acting in such capacity), shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan or this Cases; <u>provided</u>, <u>however</u>, that the foregoing provisions shall have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

98.     <u>Modification of Plan</u>. The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan.

99.    <u>Revocation of the Plan</u>.  The Debtors reserves the right to revoke or withdraw the Plan, prior to the Confirmation Date, for any reason deemed appropriate by the Debtors, in their sole discretion, including, without limitation, inability to consummate the any Restructuring Transactions.  If the Debtors revokes or withdraws the Plan, or if Confirmation does not occur, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; or prejudice in any manner the rights of the Debtors.

100.    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

101.    <u>Notices</u>.  All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

>Empire One Telecommunications, Inc.
>9th Floor
>55 Washington Street
>Brooklyn, NY  11201

with copies to:

>Piper Rudnick LLP
>1251 Avenue of the Americas
>New York, NY  10020
>Attn:   Timothy W. Walsh, Esq.

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Case.  Any such holder of a Claim or interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtors.

102.     Headings.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

103.     Severability.  If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired on invalidated by such holding, alteration or interpretation.

104.     Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

105.    <u>Request for Confirmation Pursuant to Bankruptcy Code Sections 1129(a)</u>

<u>and 1129(b)</u>.  The Debtors request entry of a Confirmation Order under Bankruptcy Code section

1129(a) and, to the extent necessary, Bankruptcy Code section 1129(b).

Dated:    New York, New York
          June 28, 2002

Respectfully submitted,
**EMPIRE ONE TELECOMMUNICATIONS,
INC., SONUS COMMUNICATIONS, INC.,
EOT TELECOMMUNICATIONS OF
CANADA, INC., EMPIRE ONE POWER, INC.,
AND SONUS COMMUNICATIONS
HOLDINGS, INC.**

By: _____ /s/ Todd Sunko _____

New1-3001736v3