**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case Nos. 01-11894, |
| EMPIRE ONE TELECOMMUNICATIONS, INC., <u>et al.</u>, | 01-11896 through 01-11898 and 02-11387 (AJG) |
| Debtors. | (Jointly Administered) |

**FIRST AMENDED DISCLOSURE STATEMENT WITH RESPECT TO THE FIRST AMENDED PLAN OF REORGANIZATION FOR EMPIRE ONE TELECOMMUNICATIONS, INC., SONUS COMMUNICATIONS, INC., EOT TELECOMMUNICATIONS OF CANADA, INC., EMPIRE ONE POWER, INC., AND SONUS COMMUNICATION HOLDINGS, INC. DATED SEPTEMBER 10, 2002**

**PIPER RUDNICK LLP**
Timothy W. Walsh (TW-7409)
Jeremy R. Johnson (JJ-9269)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 835-6000

Counsel for the Debtors

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND INFORMATION ...............................................14

III.   THE CHAPTER 11 CASE.............................................................16

IV.    THE AMENDED PLAN OF REORGANIZATION .........................20

V.     SUBSTANTIVE CONSOLIDATION ............................................20

VI.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE
       AMENDED PLAN OF REORGANIZATION ...................................41

VII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE
       AMENDED PLAN ..........................................................................46

VIII.  EFFECTS OF AMENDED PLAN CONFIRMATION ....................47

IX.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
       THE AMENDED PLAN ..................................................................49

X.     CONCLUSION AND RECOMMENDATIONS ..............................50

NEWY1:3000826.v7  9/3/02
306691-1

# I.

## INTRODUCTION

### A.    General.

The following introduction is qualified by the First Amended Plan of Reorganization of Empire One Telecommunications, Inc., Sonus Communications, Inc., EOT Telecommunications of Canada, Inc., Empire One Power, Inc., and Sonus Communication Holdings, Inc., dated September 6, 2002 (the "Amended Plan"[1]), which is attached hereto as Exhibit 1, and the more detailed information and financial statements contained elsewhere in this document.

This disclosure statement (the "Disclosure Statement") and other documents described herein are being furnished by Empire One Telecommunications, Inc., Sonus Communications, Inc., EOT Telecommunications of Canada, Inc., Empire One Power, Inc., and Sonus Communication Holdings, Inc. ("Holdings") (collectively, the "Debtors"), to holders of Claims against and Interests in the Debtors' chapter 11 cases pending before the United States Bankruptcy Court for the Southern District of New York (the "Court").

Under the current circumstances extant in these proceedings and given the absence of strategic alternatives or alternative transactions available to the Debtors, the Committee of Unsecured Creditors appointed in these cases (the "Committee") believes the terms of this Plan are in the best interest of creditors and are the best available alternative to creditors and recommends a vote in favor of the Plan.

A copy of the notice of the dates set for objections to and the hearing on confirmation of the Amended Plan (the "Notice of the Confirmation Hearing") and the order of the Court, dated _____, 2002, respecting the Notice of the Confirmation Hearing (the "Order"), are also

---

[1]    All terms not defined herein shall have the meanings ascribed to them in the Amended Plan.

being transmitted with this Disclosure Statement.  The Order and the Notice of the Confirmation Hearing set forth in detail the deadlines, procedures and instructions for filing objections to confirmation of the Amended Plan.  Each holder of a Claim should read the Disclosure Statement, the Amended Plan, the Order and the Notice of Confirmation Hearing.

Under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), only holders of claims and interests that are "impaired" are entitled to vote to accept or reject the Amended Plan.  The Bankruptcy Code further provides that a Class that is left unimpaired under the Amended Plan is deemed to have accepted the Amended Plan.  The Bankruptcy Code also provides that a class that receives no distribution under the Amended Plan is deemed to have rejected the Amended Plan.  To become effective, the Amended Plan must be accepted by certain classes of claims and confirmed by the Bankruptcy Court.  For a discussion of these matters, see "V. CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION".

If you have questions about the packet of materials that you received, please contact William Coleman, Piper Rudnick LLP, 1251 Avenue of the Americas, New York, New York 10020-1104, telephone number (212) 835-6000.

**B.**     **Classification and Treatment of Claims and Interests Under the Amended Plan.**

Certain Classes of Claims are impaired under the Amended Plan and, accordingly, are entitled to vote on the Amended Plan.  The Debtors are seeking votes to accept the Amended Plan from holders of Claims in these Classes.  Certain Classes of Interests will receive no distribution or benefits under the Amended Plan and, therefore, are deemed to have rejected the Amended Plan.  For a description of the Classes of Claims and Interests and their treatment under the Amended Plan, see "IV. THE AMENDED PLAN OF REORGANIZATION".

NEWY1:3000826.v7  9/3/02
306691.1

Estimated Claims amounts for certain Classes are based upon a preliminary analysis of proofs of Claims filed in the Debtors' chapter 11 cases. There can be no assurance that these estimated amounts are correct. The following treatments are possible only if the Amended Plan is approved and the Debtors' assessment of Claims is approved by the Court. The timing of distributions under the Amended Plan is subject to conditions and determinations described in later sections of this Disclosure Statement.

Each Class of Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes under the Amended Plan.

**Summary of Classification
And Treatment of Claims and
Interests Under the Amended Plan**

| Class Description | Estimated Amount of Allowed Claims | Impaired | Treatment |
|---|---|---|---|
| **Class 1 - Secured Tax Claims** | $ 0 | Yes | Paid in full in Cash on the later of the Effective Date or the date on which there is a Final Order Allowing such Claim. |
| **Class 2 - Secured Setoff Claims** | $ 0 | Yes | Paid in full in Cash on the later of the Effective Date or the date on which there is a Final Order Allowing such Claim. |
| **Class 3 - Claims of Secured DIP Lender** | $1.2 million | Yes | 90% of the Shares of Reorganized Debtor's Common Stock and a Senior Convertible Debenture |
| **Class 4 - Claims of Secured Debentureholder** | $80,000 | Yes | 10% of the Shares of Reorganized Debtor's New Common Stock |

NEWY1:3000826.v7  9/3/02
306691.1

| | | | |
|---|---|---|---|
| **Class 5 -Priority Claims** | $-0- | Yes | All Allowed Claims under Bankruptcy Code sections 507(a)(3), 507(a)(4) or 507(a)(6) which have not been satisfied as of the Effective Date will be paid in full in Cash on the later of the Effective Date or the date on which there is a Final Order Allowing such Claim. |
| **Class 6 -Vendor and Other Unsecured Claims** | $4.2 million[2] | Yes | Each Allowed Claim in this Class will receive a pro rata share of the total distributions to holders of all Allowed Unsecured Claims. This Class will receive a 5% dividend on the earlier of the Effective Date or thirty (30) days after entry of a final nonappealable order confirming the Amended Plan . This Class will also receive a 7% dividend on the earlier of the eighteen (l8) month anniversary of the Effective Date, the Reorganized Debtor achieving quarterly EBITDA of $100,000, the receipt of Regulatory Order Credits or upon the occurrence of a Capital Event. In addition, this Class will receive a "no-cost" option for 3% of the Reorganized Debtor's equity as of the Effective Date, if there is a Capital Event within five (5) years of the Effective Date. |

---

[2]    This amount assumes a reduction of approximately $450,000 of the Claims asserted against Holdings. These Claims consist primarily of the Claims of unsecured debentureholders, certain trade claims and the claim of a certain landlord. These claims will be reduced either by voluntary withdrawal, stipulation or order of the Court. Because many of the debentureholders of Holdings are affiliated with EOT Lending Corp., the Debtors believe that they will be successful in significantly reducing the Claims asserted against Holdings.

| Class 7 - Interests | Multiple | Yes | As of the Effective Date, all Interests in the Debtors shall be expunged and the holders of such Interests will not receive any distribution on account of such Interests. |

C.    **Amended Plan Overview.**

The following is a brief overview of the Amended Plan.  It is qualified by reference to the Amended Plan itself, a copy of which is annexed hereto as Exhibit 1.  In addition, for a more detailed description of the terms and provisions of the Amended Plan, see "IV. THE AMENDED PLAN OF REORGANIZATION".

The Amended Plan is the result of negotiations among the Debtors, EOT Lending Corp., the Official Committee of Unsecured Creditors (the "Committee") and various creditors.  All Claims, liens, charges and other encumbrances will be paid as set forth in the Amended Plan out of available cash and the Exit Financing.  As part of the Amended Plan, Sonus Communications, Inc., EOT Telecommunications of Canada, Inc., and Empire One Power, Inc., which are currently inactive, will be dissolved after completing all acts necessary to effectuate the Amended Plan.  Sonus Communications Holdings, Inc. may emerge as a non-operating entity.  One new entity, the Reorganized Debtor, EOT, will emerge from these bankruptcy cases.  Creditors will be paid as set forth in the Amended Plan and as summarized above.  The Debtors submit that the Amended Plan will afford Creditors a superior return on account of their Claims than would a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

Mechanics of Distribution.  Under the Amended Plan, holders of all Allowed Claims will receive the distributions or other treatment provided under the Amended Plan on the Effective Date or as soon as practicable thereafter.

The Effective Date will occur not later than the thirtieth (30th) day after the Confirmation Order becomes a Final Order; provided, however, that such date may be extended by the Debtors and the Court and will not occur earlier than the date of the satisfaction of each of the conditions precedent to occurrence of the Effective Date of the Amended Plan, unless waived. See "IV. THE AMENDED PLAN OF REORGANIZATION".

In determining the amount of distributions to be made under the Amended Plan to holders of Allowed Claims, the appropriate distributions required under the Amended Plan will be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the holders thereof. No distributions will be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Amended Plan governing the class of Claims in which such Claim is classified. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing the Disputed Claim becomes a Final Order, a distribution will be made to the holder of such Claim, consisting of any payment or property that would have been distributed to such holder if the Claim had been allowed on the Consummation Date, without any interest thereon.

### D. Summary of Confirmation Requirements.

Each holder of a Claim against or Interest in the Debtors entitled to vote to accept or reject the Amended Plan should read this Disclosure Statement and the Amended Plan in their entirety before voting. No solicitation of votes to accept or reject the Amended Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. No holder should rely on any information relating to the Debtors, their property or the Amended Plan other than that contained in this Disclosure Statement and the attached exhibits.

NEWY1:3000826.v7 9/3/02
306691.1

Under the Bankruptcy Code, only classes of Claims or Equity Interests that are "impaired" are entitled to vote to accept or reject the Amended Plan. See "IV. THE AMENDED PLAN OF REORGANIZATION", and "I. VOTING INSTRUCTIONS AND DEADLINE". The Bankruptcy Code requires, as a condition to confirmation of a consensual Amended Plan of reorganization, that each impaired class of claims or equity interests accept the Amended Plan. A class of creditors is deemed to accept an Amended Plan if the holders of at least two-thirds in dollar amount, and more than one-half in number, of those creditors that actually cast ballots vote to accept such Amended Plan. A class of equity interest holders is deemed to accept an Amended Plan if the holders of at least two-thirds in amount of the allowed equity interests that actually cast ballots vote to accept such Amended Plan.

Liabilities incurred in the ordinary course of business by the Debtors since the Petition Date that are described in the Amended Plan as Administrative Expense Claims will be paid on the later of the Effective Date or the date that such Claims become Allowed Administrative Expense Claims, or paid by the Disbursing Agent in accordance with the terms and conditions of the particular transaction and any related agreements. Holders of Administrative Expense Claims will not be entitled to vote on the Amended Plan.

Any Claims arising from the rejection of executory contracts and unexpired leases are treated under the Bankruptcy Code as if they arose before the filing of the chapter 11 petitions.

Any Claim or Interest in an impaired class as to which an objection is pending or which is scheduled by the Debtors as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim or Interest has obtained an order of the Bankruptcy Court temporarily allowing the Claim or Interest for the purpose of voting on the Amended Plan.

NEWY1:3000826.v7 9/3/02
306691.1

E.    **Voting Instructions and Deadline**.

The Debtors have prepared this Disclosure Statement as required by Bankruptcy Code section 1125 and Federal Rule of Bankruptcy Procedure 3016(c).  It is being distributed to holders of Claims against the Debtors to assist such holders in evaluating the feasibility of the Amended Plan, the manner in which their Claims are treated and in determining that the Amended Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.  A copy of the Amended Plan is attached to this Disclosure Statement as Exhibit 1.  The purpose of this Disclosure Statement is to assist those entitled to vote on the Amended Plan to make an informed judgment in voting to accept or reject the Amended Plan.

The Bankruptcy Court approved this Disclosure Statement on September ___, 2002 as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Amended Plan.

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE AMENDED PLAN.  ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE AMENDED PLAN.**

This Disclosure Statement describes the background of the Debtors and the significant events leading up to and following filing of the chapter 11 petition on the Petition Date.  It summarizes the major events that have taken place during the Debtors' chapter 11 Cases and describes the terms of the Amended Plan which divides creditor Claims and equity Interests into

Classes and provides for the treatment of Allowed Claims and Interests as set forth in the Amended Plan.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE AMENDED PLAN.  NO SOLICITATIONS FOR OR AGAINST THE AMENDED PLAN MAY BE MADE EXCEPT THROUGH THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE AMENDED PLAN.  WHILE THE DEBTORS BELIEVE AND HAVE MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE AMENDED PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE AMENDED PLAN.  IF THERE IS ANY INCONSISTENCY BETWEEN THE AMENDED PLAN AND THE SUMMARY OF THE AMENDED PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THE AMENDED PLAN SHALL CONTROL.  ACCORDINGLY, EACH HOLDER OF A CLAIM SHOULD REVIEW THE ENTIRE AMENDED PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 3016(c) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NONBANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE AMENDED PLAN IN LIGHT OF THE

NEWY1:3000826.v7  9/3/02
306691.1

PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTORS AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS.

THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS. WHILE THE DEBTORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN AND IN THE EXHIBITS ATTACHED HERETO, THE DEBTORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE INFORMATION.

  1.  **General Information.**

Under the Bankruptcy Code, certain Classes of creditors are deemed to accept or reject the Amended Plan and the vote of these Classes will not be solicited.

NEWY1:3000826.v7  9/3/02
3066911

### 2. Unimpaired Classes Are Deemed to Accept the Amended Plan and Will Not Vote.

If a Creditor holds Claims included within a Class that is not impaired under the Amended Plan, under Bankruptcy Code section 1126(f), the Creditor is deemed to have accepted the Amended Plan with respect to such Claims and its vote of such Claims will not be solicited. There are no unimpaired Classes under the Amended Plan.

#### a. Certain Classes Are Deemed to Reject the Amended Plan and Will Not Vote.

Under Bankruptcy Code section 1126(g), Class 7, consisting of the interests of shareholders of the Debtors, are deemed not to have accepted the Amended Plan and the vote of holders of such Interests in this Class will not be solicited. Any holder of an Interest in this Class may, however, object to the Amended Plan provided that such holder has not otherwise waived such right.

### 3. Claims Which Are Not Allowed Claims.

The Bankruptcy Code provides that only the holders of Allowed Claims are entitled to vote on the Amended Plan. A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection and allows the Claim. Consequently, although holders of Claims subject to a pending objection will receive ballots, their votes will not be counted unless the Bankruptcy Court, prior to the confirmation hearing, rules on the objection and allows the Claim or, on proper request under Federal Rule of Bankruptcy Procedure 3018(a), temporarily allows the Claim in an amount which the Court deems proper for the purpose of voting on the Amended Plan.

NEWY1:3000826.v7  9/3/02
306691 1

### 4. Voting.

If a Creditor holds a Claim classified in a voting Class of Claims under the Amended Plan, the Creditor's acceptance or rejection of the Amended Plan is important and must be in writing and filed on time.

a.    How to Vote.  **IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT, AND RECEIVED NOT LATER THAN OCTOBER 8, 2002 AT 4:00 P.M. EASTERN DAYLIGHT TIME (THE "VOTING DEADLINE") BY THE BALLOTING AGENT AS SET FORTH ON THE BALLOT.**

b.    Ballots.  Creditors must use only the ballot or ballots sent to them with this Disclosure Statement.  If a Creditor has Claims in more than one Class, it should receive multiple ballots.  **IF A CREDITOR RECEIVES MORE THAN ONE BALLOT THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.**

**IF A CREDITOR IS A MEMBER OF A VOTING CLASS AND DID NOT RECEIVE A BALLOT FOR SUCH CLASS, OR IF SUCH BALLOT IS DAMAGED OR LOST, OR IF A CREDITOR HAS ANY QUESTIONS CONCERNING VOTING PROCEDURES, CALL WILLIAM COLEMAN at 212-835-6145 DURING BUSINESS HOURS.**

If a Creditor has any questions about the procedure for voting its Claim or the packet of materials that it received, please contact:

William Coleman
Piper Rudnick LLP
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 835-6145

### F.    The Confirmation Hearing

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Amended Plan on October 16, 2002 at 9:30 a.m., before the Honorable Arthur J. Gonzalez, United States

Bankruptcy Court, Southern District of New York, One Bowling Green, Alexander Hamilton Customs House, New York, New York. The Bankruptcy Court has ordered that objections, if any, to confirmation of the Amended Plan be filed and served within the time and in the manner described in the notice which accompanies this Disclosure Statement. The date of the confirmation hearing may be continued at such later time(s) as the Court may announce during the confirmation hearing without further notice.

If the Amended Plan is confirmed by the Court, it will be binding on all Creditors and Interest holders regardless of whether an individual creditor or Interest holder has supported or opposed the Amended Plan.

**THE DEBTORS RECOMMEND THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE AMENDED PLAN. IT IS THE OPINION OF THE DEBTORS THAT THE TREATMENT OF CREDITORS UNDER THE AMENDED PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

**G.** **Definitions**

**Defined Terms**. As used in this Disclosure Statement, terms defined in the Amended Plan and not otherwise specifically defined herein will have the meanings attributed to them in the Amended Plan.

**Bankruptcy Code and Federal Rules of Bankruptcy Procedure**. A term used but not defined in this Disclosure Statement has the meaning given it in the Bankruptcy Code and/or the Federal Rules of Bankruptcy Procedure, if any.

NEWY1:3000826.v7 9/3/02
306691.1

**Interpretation of Terms**.  Each definition in the Disclosure Statement and in the Amended Plan includes both the singular and the plural, and references in the Disclosure Statement include the masculine and feminine where appropriate.  Headings are for convenience of reference and shall not affect the meaning or interpretation of the Disclosure Statement.

## II.

## BACKGROUND INFORMATION

### A.      Structure and Operations.

The Debtors, except Holdings, are privately-held companies.  EOT has issued 100 shares of common stock.  As of the Petition Date, Holdings was the sole shareholder of EOT.  Holdings, a publicly traded company, has approximately 13 million shares outstanding.

The Debtors provide a diverse range of wholesale and retail integrated communications services, including standard voice telecommunications (local and long distance), dial-up and dedicated Internet access and specialized data services for commercial subscribers.  The Debtors maintain Web portals in Chinese, Russian and English, and their marketing, sales and customer services are provided in the languages of their target markets.

The Debtors' books and records are principally located at its executive offices at 55 Washington Street, 9th Floor, Brooklyn, NY  11201.  The principal assets of the Debtors are located in Brooklyn, New York.  None of the Debtors' assets or books and records are located outside the territorial limits of the United States.

### B.      Principal Liabilities of the Debtors.

**Vendor Claims**.  The Debtors believe that, as of the Petition Date, they were obligated to trade creditors in the aggregate sum of approximately $4.2 million.

**The DIP Loan**.  The Debtors are indebted to the DIP Lender in the amount of $1.2 million for the DIP Loan, which was approved by the Bankruptcy Court in June, 2001 and May,

2002.  The DIP Loan is secured by a first priority senior security interest in and lien on all of the property, real and personal, tangible and intangible, of the Debtors' Estates under Bankruptcy Code section 541, with the exception of collateral securing certain permitted liens, in which case the DIP Lender has been granted a second priority security interest junior only to such permitted liens.

**The Quadrant Debenture**.  On January 3, 2001, Quadrant loaned Holdings $80,000 pursuant to the Quadrant Debenture.  The funds obtained by Holdings under the Quadrant Debenture were used to fund the Debtors' operations, and in exchange for the same, EOT granted to Quadrant a security interest on all of its assets, including all accounts receivable owing or thereafter owing to EOT.

**Employee Claims**.  Most employee claims have been paid pursuant to prior order of the Court.

**Pension, Vacation and Retirement Claims**.  Claims in connection with employee pensions, vacation and retirement plans currently total $0.

C.  **Significant Events Preceding Commencement of the Bankruptcy Cases.**

The filing of the Debtors' chapter 11 cases was precipitated by a number of factors.  The voice and data service technology employed by the Debtors, known as "Voice Over IP," did not command the degree of customer acceptance and demand as contemplated.  This factor, coupled with increased competition and service outages, negatively impacted price of the service.  In addition, the Debtors entered into agreements with several service providers at uneconomic terms, which resulted in significant operating losses.  The Debtors had to absorb substantial write-downs of network equipment upon discontinuing service with these providers.  The Debtors were further burdened by existing debt and the inability to obtain additional financing

NEWY1:3000826.v7  9/3/02
306691 1

Prior to the chapter 11 filing, the Debtors needed to evaluate and restructure its relationships with vendors and suppliers, to increase productivity and expand their customer base. It was believed that these tasks could best be accomplished in chapter 11.

**III.**

**THE CHAPTER 11 CASE**

A.     **Significant Events in Chapter 11.**

1.     **The filing of Chapter 11 petition.**  On or about April 2, 2001, the Debtors, except Holdings, filed chapter 11.  On March 26, 2002, Holdings filed a chapter 11 petition in the Court.  Since that time, the Debtors have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     **The DIP Loan.**  Shortly after seeking chapter 11 protection, the Debtors investigated their options to obtain debtor in possession financing to fund operations and an anticipated business expansion.  The DIP Lender is a corporation known as EOT Lending Corp., and is comprised of several investors, including certain of the Debtors' officers and directors, and is represented by separate legal counsel.  The DIP Lender was the only lender willing to loan funds to the Debtors after the Petition Date.  The DIP Loan, in the original principal amount of $600,000, was approved by the Bankruptcy Court in June, 2001.  The DIP Loan was later extended by an additional $600,000 which was approved by the Court in May, 2002.  The DIP Loan is secured by a first priority senior security interest in and lien on all of the property, real and personal, tangible and intangible, of the Debtors' estates under Bankruptcy Code section 541, with the exception of collateral securing certain permitted liens, in which case the DIP Lender has been granted a second priority security interest junior only to such permitted liens.

- 16 -

3. **Cost-Cutting Efforts.** The first prong of the Debtors' efforts to emerge from bankruptcy protection was the reduction of overhead and costs of operation. This included the evaluation and rejection of a large number of unfavorable executory contracts and unexpired leases for goods and services at higher than current market rates. The lease for the Debtors' office space was also evaluated and ultimately rejected and a new lease for comparable, less expensive space in Brooklyn, New York was entered into. The Debtors also reduced their workforce considerably, reallocated the workforce to increase productivity, and combined workers' roles where appropriate to do so without compromising the quality of customer service. Additionally, the Debtors negotiated lower rates with primary vendors to reduce cost of goods sold.

4. **Expansion of Business Operations.** In addition to the cost-cutting measures described above, the Debtors' plan for emergence from bankruptcy included an effort to expand their customer base and increase their ability to service a greater number of customers with higher quality, more reliable service. To that end, the Debtors sought Court approval to reject their existing switch equipment lease and to enter into a new lease for switch equipment that would provide greater capabilities and reliability at a lower cost. The Debtors also increased their marketing efforts in certain of their existing key markets and potentially new markets.

5. **Events of September 11.** The Debtors' offices are located several blocks from the former site of the World Trade Center, and both operations and the Debtors' network were significantly impacted. The Debtors' primary suppliers were also impaired by the events of September 11th which resulted in inconsistent service for the Debtors' customers for an extended time after September 11. The Debtors have sought relief through various programs aimed at

assisting businesses affected by September 11, but have not successfully obtained any financial assistance to date.

6. **Exit Financing.** The DIP Lender, EOT Lending Corp., has agreed to supply exit financing for the Debtors in the amount of $500,000 (the "Exit Financing"). EOT Lending Corp. has also agreed to convert the existing DIP Financing, plus the Exit Financing into a Senior Convertible Debenture (the "Debenture"). The total amount of the Debenture shall be $1.7 million which shall include the DIP Financing and the Exit Financing. The Debenture will be secured by all the Reorganized Debtors' Assets. The initial term is five (5) years, renewable upon maturity. The interest rate will be zero. The repayment amortization will be 240 months, payment in equal monthly installments of $7,500. The payout term is subject to amendment upon maturity. EOT Lending Corp. has agreed to forgive the accrued interest on the DIP Financing. The Debenture will be in substantially similar to the Credit Agreement used in the DIP Loan, attached hereto as Exhibit 2.

7. **Settlement of Certain Claims.** The Debtors have reached agreements with several key vendors to ensure continued service after exiting bankruptcy. The most significant settlement was with the Debtors' primary vendor, Global Crossings, who accepted a settlement on its claims and entered into a new contract with lower rates going forward. In addition, the Debtors intend to reduce approximately $450,000 of the Claims asserted against Holdings. These Claims consist primarily of the Claims of unsecured debentureholders, certain trade claims and the claim of a certain landlord. These claims will be reduced either by voluntary withdrawal, stipulation or order of the Court. Because many of the debentureholders of Holdings are affiliated with EOT Lending Corp., the Debtors believe that they will be successful in significantly reducing the Claims asserted against Holdings.

8.     **Marketing of the Debtors' Assets.**  Both before and after the Petition Date, the Debtors marketed their assets to potential strategic and financial buyers as a going concern.  Approximately eight (8) potential bidders executed confidentiality agreements and six (6) performed at least some due diligence.  The Debtors received no offers for their assets.   The Debtors continue to hear from potential purchasers and permit due diligence.

9.     **Alleged Verizon Default.**  On May 21, 2001, the Court entered the Stipulation and Consent Order Establishing Adequate Assurance of Payment to the Subsidiaries of Verizon Communications Inc. Under Bankruptcy Code Section 366 (the "Stipulation"). Verizon alleges that the Debtors are in default and has sent the Debtors notice of the alleged default (the "Default").  Verizon claims that the Default totals $154,056.14, which the Debtors dispute.  However, the Debtors have increased their semi-monthly payments to Verizon to $88,000 and believe that they have made payments to cure the default.  It is also Verizon's position that it may immediately terminate services to the Debtors due to the Default. The Debtors believe that the alleged Default represents improper late fees and interest charges and, in the event Verizon moves to terminate services, the Debtors will seek a temporary restraining order enjoining such conduct. The Debtors and Verizon are currently working to resolve the dispute as to the Default. If the Debtors are indeed in default under the Stipulation, the Debtors must provide notice of discontinuance to end users as required by the Federal Communications Commission.

## IV.

## THE AMENDED PLAN OF REORGANIZATION

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE,**

**CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE AMENDED**

**PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE AMENDED PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT 1.**

    A.    <u>Classification and Treatment of Claims and Interests Under the Amended Plan.</u>

The Claims against the Debtors are divided into Classes, according to their seniority and other criteria. If the Amended Plan is confirmed by the Court and then consummated, (i) Allowed Claims in secured Classes will receive payment equal to the value of their Allowed Secured Claims, (ii) Allowed Claims in unsecured Classes will receive distributions constituting partial recovery on a <u>pro</u> <u>rata</u> basis; and (iii) Interest holders in the Debtors will receive no distribution. The Classes of Claims and Interests in the Debtors, and the funds and other property to be distributed under the Amended Plan, are described below. All intercompany Claims will be expunged pursuant to the Confirmation Order.

**V.**

**SUBSTANTIVE CONSOLIDATION**

    A.    The Plan is predicated upon, and it is a condition precedent to confirmation of the Plan that the Bankruptcy Court provides in the Confirmation Order for, substantive consolidation of the Chapter 11 Cases of the Debtors into a single Chapter 11 Case for purposes of this Amended Plan and the distributions hereunder. Pursuant to such Confirmation Order, (i) all assets and liabilities of the Debtors will be merged, (ii) any obligations executed by any Debtor will be deemed to be one obligation of the Debtors, (iii) any claims filed or to be filed in connection with any such obligation will be deemed one claim against the Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Case, in accordance with the substantive consolidation of the assets and liabilities of the Debtors and (v) all transfers, disbursements and

- 20 -

distributions made by any Debtor will be deemed to be made by all of the Debtors.  Holders of Allowed Claims in each Class shall be entitled to their pro rata share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim.

**THE DEBTORS BELIEVE THAT THE AMENDED PLAN AFFORDS CREDITORS THE POTENTIAL FOR THE GREATEST REALIZATION OF THE DEBTORS' ASSETS.**

1.     **Treatment of Administrative and Tax Claims.**

Certain Claims need not be classified under a plan pursuant to the Bankruptcy Code, including Administrative and Priority Tax Claims.

a.     **Administrative Claims.**

The Amended Plan defines Administrative Claims as any Claim for payment of an administrative expense in the Debtors' bankruptcy case of a kind specified in section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses of preserving the Debtors' Estates and operating the business of the Debtors, including payment of wages, salaries, or commissions for services rendered after the commencement of the Case, taxes incurred by the Debtors' Estates and allowed as administrative expenses, compensation for legal and other services and reimbursement of expenses allowed or awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the estate of the Debtors under chapter 123 of title 28, United States Code.

Allowed Administrative Claims will be treated under the Amended Plan as follows: except as otherwise provided (i) in the Amended Plan, (ii) by agreement of the holder of an Allowed Administrative Claim to different treatment or (iii) by order of the Court, a Person

holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such

Allowed Administrative Claim which has come due for payment under any applicable order or

law as soon as practicable after the later of (a) the Effective Date, (b) the date on which such

Person becomes the holder of an Allowed Administrative Claim or (c) the date or dates when

that Claim is payable by its terms. Notwithstanding, and in lieu of, the foregoing treatment of

Allowed Administrative Claims:

> (i)        Allowed Administrative Claims that are liabilities or obligations
> incurred by the Debtors in the ordinary course of its business during the Case,
> shall be paid or performed by the Debtors, in the ordinary course of business in
> accordance with the terms and conditions of any agreements, orders, or applicable
> law relating thereto;

> (ii)       Interim and final payments for Fee Claims may be made in
> accordance with any order of the Court.

The Debtors estimates that the aggregate amount of unpaid Allowed Administrative

Claims as of the Effective Date will be approximately $275,000 and will consist of legal fees and

expenses of the Debtors' counsel and accountants, the Committees' counsel and accountants and

of fees and expenses for the Debtors' and the Committees' professionals held back pursuant to

an order of the Bankruptcy Court.

### b.        **Priority Tax Claims.**

The Amended Plan defines Priority Tax Claims as Claims of governmental units entitled

to priority under section 507(a)(7) of the Bankruptcy Code if Allowed. Any Allowed Priority

Tax Claims of governmental units which are secured by valid liens are not included within

Bankruptcy Code section 507(a)(7) and, under the Amended Plan, are treated as Secured Claims

in Class 1 under the Amended Plan as described below.

The Debtors estimate that on the Effective Date of the Amended Plan, there will not be any Allowed Priority Tax Claims.

## 2. Treatment of Classified Claims and Interests.

The Amended Plan provides for certain Claims and Interests by Class, as provided in Bankruptcy Code sections 1122 and 1123(a)(1). The Classes established by the Amended Plan, and the treatment of each Class, are set forth below. The Amended Plan provides for certain general treatment provisions which, in addition to other generally applicable provisions (including distribution provisions described in a later section of this Disclosure Statement), apply to the treatment of all Claims under the Amended Plan.

The Amended Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or non-governmental, although certain payments may not be made until after the Effective Date.

### a. Secured Claims.

Except as set forth below, holders of Class 1 and 2 Allowed Secured Claims will be paid in full in Cash on the later of the Effective Date or the date on which there is a Final Order allowing such Claims.

Class 1. *This Class is impaired*. This Class consists of all Allowed Secured Claims against the Debtors for federal, state and local taxes. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Claim in this Class, each holder of an Allowed Secured Claim in this Class shall receive Cash payments totaling at least the Allowed amount of its Claims, possessing a value, as of the Effective Date, equal to the full value of the Allowed Secured Claim, on the later of (i) the Effective Date or (ii) the Date on

- 23 -

which there is a Final Order Allowing such Claim. The Debtors estimate that there will not be any Allowed Secured Claims in Class 1.

  Class 2.    *This Class is impaired*. This Class consists of all Allowed Secured Claims against the Debtors representing setoff rights. Each Allowed Claim in this Class shall be in a separate subclass. Unless otherwise agreed by the holder of any Claim in this Class, each Allowed Secured Claim in this Class shall be paid in full on the later of (i) the Effective Date or (ii) the Date on which there is a Final Order Allowing such Claim. The Debtors estimate that there will not be any Allowed Secured Claims in Class 2.

  Class 3.    *This Class is impaired*. This Class consists of the Allowed Secured Claim of EOT Lending Corp. under the terms of the DIP Loan, which DIP Loan is secured by a first priority senior security interest in and lien of all the property, real and personal, tangible and intangible of the Debtors. An allowed claim in this Class will receive ninety percent (90%) of the shares of the Reorganized Debtor. Pursuant to an agreement between EOT Lending Corp. and the senior management of the Debtors, EOT Lending Corp. will distribute twenty percent (20%) of the total shares of the Reorganized Debtor to the Management Group. Such equity is provided as a means to incentivize the Management Group to continue their employment with the Reorganized Debtor, the Management Group will also receive approximately $230,000 in salary for the year after the Effective Date.

  Class 4.    *This Class is impaired.* This Class consists of the claim of Quadrant under the Quadrant Debenture. The claim is secured by a security interest and lien on the Debtors' accounts receivable. An Allowed Claim in this Class will receive ten percent (10%) of the Reorganized Debtor's shares. The Committee contends that the claim of Quadrant is unsecured. However, the Committee, as part of a consensual resolution of this proceeding, does

NEWY1:3000826.v7  9/3/02
306691.1

not object to the proposed distribution to Quadrant under the Plan.  The Debtors estimate that the Allowed Claims of Class 4 total $80,000.

> **b.**     **Priority Claims Under Bankruptcy Code Sections 507(a)(3), 507(a)(4) or 507(a)(6).**

Class 5.          *This Class is impaired*.  This Class consists of all Allowed Unsecured Claims against the Debtors that are specified as having priority in Bankruptcy Code sections 507(a)(3), 507(a)(4) or 507(a)(6), if any such Claims still exist as of the Effective Date.  Unless the holder of a particular Claim agrees to a less favorable treatment, each Allowed Claim under Bankruptcy Code sections 507(a)(3), 507(a)(4) or 507(a)(6), which has not been satisfied as of the Effective Date, shall be paid in full in Cash on the later of (i) the Effective Date or (ii) the Date on which there is a Final Order allowing such Claim.  The Debtors estimate that there will not be any Allowed Priority Claims in Class 5

> **c.**     **Impaired Unsecured Claims Without Priority.**

Class 6.          *This Class is impaired*.  This Class consists of all Allowed Unsecured Claims, including, without limitation, Vendor and Trade Claims, and Allowed Unsecured Claims arising from rejected executory contracts and unexpired leases.  A schedule of assumed and rejected contracts is attached hereto as Exhibit 3.  Unless otherwise agreed by the holders of the Allowed Unsecured Claims in this Class, each holder of an Allowed Unsecured Claim in this Class shall receive Cash payments totaling its pro rata share of the distribution to the holders of Allowed Unsecured Claims. This Class will receive a five percent (5%) dividend on the earlier of the Effective Date or thirty (30) days after entry of a final nonappealable Confirmation Order and a seven percent (7%) dividend on the earlier of the eighteen (l8) month anniversary of the Effective Date, upon the Reorganized Debtor achieving quarterly EBITDA of $100,000, upon the receipt of Regulatory Order Credits, or upon the occurrence of a Capital Event.  This Class

NEWY1:3000826.v7  9/3/02
306691.1

will also receive a "no cost option" for three percent (3%) of the Reorganized Debtor's equity calculated as of the Effective Date if there is a Capital Event within five (5) years of the Effective Date. The three percent (3%) equity will be held by EOT Lending Corp. The Debtors estimate that the total Allowed Claims in this Class will be approximately $4.2 million dollars.

### d. **Interests.**

Class 7. *This Class is impaired*. This Class consists of the Interests of all shareholders on the Petition Date. As of the Effective Date, all Interests in the Debtors shall be expunged and the holders of such Interests will not receive any distribution on account of such Interests.

### B. **Funding of the Amended Plan.**

The Exit Financing will be made available for distribution to holders of Allowed Claims under the terms of the Amended Plan. The Exit Financing will be $500,000 and will be made available by EOT Lending Corp. At the present time, the Debtors' Available Cash is approximately $300,000.

### C. **Other Amended Plan Provisions.**

1. **Amended Plan Distributions**. All cash necessary for the Debtors to make payments pursuant to the Amended Plan shall be obtained from the Debtors' available cash balances and the Exit Financing. The Reorganized Debtor's failure to make payments under the Amended Plan will result in the holder of any Allowed Claim being deemed to hold a claim in the full amount of its Allowed Claim less any payments made pursuant to the Amended Plan.

2. **Preservation of Rights of Action**. In accordance with section 1123(b) of the Bankruptcy Code, the Debtors may enforce any claims, rights and causes of action that they or the Estates may hold against any entity. Notwithstanding any of the foregoing, on the

Effective Date, Avoidance Actions against Trade Creditors and non-Debtor parties to assumed contracts shall be deemed waived and released.

### 3. Miscellaneous Matters.

#### a. Financial Reporting.

Until such time as the payments have been paid in full under the Plan, the Reorganized Debtor shall provide to any holder of an Allowed Claim and the Oversight Agent, upon reasonable written request, annual and quarterly unaudited financial reports of Reorganized Debtor and such other financial information as may from time to time be reasonably requested by the Oversight Agent including without limitation, a calculation of EBITDA. Any party requesting such information must agree to be bound by a confidentiality agreement with respect thereto.

#### b. Affirmative Covenants.

Until such time as the Payments have been paid in full under the Plan, the Reorganized Debtor shall take the necessary steps to:

(a)     preserve the Reorganized Debtor's corporate existence and its right to conduct business in all states in which the nature of its business requires qualifications to do business;

(b)     keep its books and records in accordance with GAAP;

(c)     maintain and preserve all of its properties and assets which are used or which are useful in the conduct of its business;

(d)     duly pay and discharge all taxes and tariffs;

(e)     make all payments and otherwise perform all obligations in respect of all leases of real property;

(f)     maintain insurance with responsible and reputable insurance companies in such amounts and covering such risks as is usually carried by companies engaged in similar businesses and timely pay such premiums; and

(g)     otherwise perform obligations in respect of equipment leases and equipment financing arrangements. Notwithstanding the foregoing, nothing in this section is intended to restrict the Reorganized Debtor from exercising its rights and remedies in contesting any tax, tariff, lease, for financing obligation in the exercise of its business judgement and no change in the conduct of the Reorganized Debtor's business shall be deemed a breach of these affirmative covenants unless such breach has a material adverse effect on the Reorganized Debtor's obligations to make the payments under the Plan.

c.     **Limitation On Transactions With Insiders.**

Until such time as all Payments required under the Plan have been paid according to Plan terms, the Reorganized Debtor shall not enter into, renew or extend any agreement relative to the sale, purchase, lease of any assets, property or services from or to any member of the Management Group, any entity controlled or managed by a member of the Management Group or any insider or affiliate of the Reorganized Debtor on terms that are less favorable to the Reorganized Debtor than would be available in a comparable transaction with an unaffiliated third party, nor shall the Reorganized Debtor advance money or credit or other financial accommodation to an insider or affiliate of the Reorganized Debtor, with the exception of increases in salary or stock options.

d.     **Negative Covenants.**

Until such time as the Payments under the Plan have been paid in full, other than in the ordinary course of business for general corporate purposes, to extend, refinance, renew or replace existing indebtedness or indebtedness contemplated by this Plan or for the purpose of financing all or any part of the purchase price or cost of any acquisition, the Reorganized Debtor shall not create, incur, assume or guarantee new indebtedness.  Nor shall the Reorganized Debtor create, incur, assume or allow liens or encumbrances other than Permitted Encumbrances or repurchase stock or increase compensation of the Management Group by more than ten percent (10%) in the

- 28 -

first year following the Effective Date and twenty percent (20%) in each of the two (2) successive years if the Scheduled Payments remain unpaid.

e.       **The Oversight Agent.**

An Oversight Agent will be appointed to act as observation and notice agent for the holders of Class 6 Claims and shall be entitled to receive the Reorganized Debtor's quarterly and annual unaudited financial reports, and to request such other financial information as may from time to time be reasonably requested and to notice holders of Class 6 Claims of the occurrence of a Capital Event or breach, default or violation of the Plan.  The Oversight Agent has the power and authority to retain counsel.  The Oversight Agent shall be paid compensation, up to a maximum of $5,000, for his services rendered and expenses incurred as Oversight Agent, including reasonable fees of counsel.  The Oversight Agent will bill at his current hourly rate, as same may be increased from time to time in accordance with firm practices.

f.       **Bar Date for Certain Fee Claims.**

Each Person retained or requesting compensation in the Cases pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), and 1103 (including any compensation for substantial contribution in the Cases) will be entitled to file with the Court an application for allowance of interim or final compensation and reimbursement of expenses through the Confirmation Date ("Fee Claims") until not later than thirty (30) days after the mailing of notice of Confirmation. All such Fee Claims for which an application is not timely filed will be forever barred. Objections to each such application may be filed on or before twenty (20) days after such application is filed.  The Court will determine all such Claims.

g.       **Bar Date for Other Administrative Claims.**

All Claims against the Debtors for Administrative Claims will be required to be filed pursuant to order of the Court, no later than September 20, 2002, with the exception of United

NEWY1:3000826.v7  9/3/02
306691.1

States Trustee quarterly fees due pursuant to 28 U.S.C, § 1930. All such Claims not timely filed will be forever barred. The Debtors and any other party in interest may object to the allowance of any such Claim before, on, or after the Effective Date. The Debtors do not believe that there are any unpaid Administrative Claims except Fee Claims.

h.    **Further Authorization.**

The Debtors will be entitled to seek such orders, judgments, injunctions, and rulings from the Court, in addition to those specifically listed in the Amended Plan, as may be necessary to carry out the intentions and purposes and to give full effect to the provisions of the Amended Plan. The Court will retain jurisdiction to enter such orders, judgments, injunctions, and rulings.

i.    **Satisfaction of Claims and Interests.**

Holders of Claims and interests will receive the distributions provided for in the Amended Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Claims and Interests. All intercompany Claims will be expunged pursuant to the Confirmation Order.

j.    **Abandoned Property.**

The Amended Plan provides that any and all property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code: (1) will remain abandoned forever; (2) will not thereafter be deemed to be property of the Debtors or any successor to the Debtors; (3) will not at any time revest in the Debtors; and (4) will not otherwise, whether by conveyance or otherwise, ever become the property of the Debtors.

k.    **Post-Effective Date Effect of Evidences of Claims or Interests.**

The Amended Plan provides that notes, stock certificates, and other evidences of liens or Claims against or interests in the Debtors will, effective upon the Effective Date of the Amended

NEWY1:3000826.v7  9/3/02
306691.1

Plan, represent only the right to participate in the distributions or rights, if any, contemplated by the Amended Plan.

### l.     **Term of Stays.**

The Amended Plan provides that, except as otherwise provided, the stay provided for in the Case pursuant to Bankruptcy Code section 362 shall remain in full force and effect until the Effective Date.

### m.     **Post-Confirmation Employment and Payment of Professionals.**

The Amended Plan provides that, on and after the Confirmation Date, the Debtors may pay professionals for services to be performed after the Confirmation Date on a monthly basis without prior approval of the Court.  Payments for services or expenses incurred prior to the Effective Date must, however, be disclosed to the Court and will be subject to the Court's final approval as reasonable.  On motion and such notice as may be appropriate, the Court will determine the reasonableness of such payments.

### n.     **Committee Dissolution**

The Amended Plan provides that the Committee will be dissolved thirty (30) days after the Effective Date except as to the Committee's involvement with respect to:  (i) applications under sections 330 and 503 of the Bankruptcy Code; and (ii) the Committee's objections to such applications, compensation or reimbursement of expenses; (iii) objections to Claims; or (iv) enforcement of the provision of the Plan.  As of the Effective Date, the Committee will be dissolved without prejudice to be reappointed at some later date if necessary.

### o.     **Retention of Jurisdiction.**

The Amended Plan provides that, notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court will retain jurisdiction to the fullest extent permitted by law including to enter any orders or to take any action specified in the Amended Plan,

including, without limitation, the following: (a) to allow, disallow, reconsider (subject to Bankruptcy Code section 502(j) and applicable Federal Rules of Bankruptcy Procedure), estimate, liquidate, classify, or determine any Claim against the Debtors, including Fee Claims or other Claims for compensation or reimbursement, (b) to hear and determine all Claims, adversary proceedings, applications, motions, and contested or litigated matters arising under the Bankruptcy Code or arising in or related to the Case filed or commenced before or after the Confirmation Date or pursuant to the Amended Plan and to adjudicate and enforce claims or causes of action of the Debtors or their Estates arising under the Bankruptcy Code or arising in or related to the Case, whether or not pending on the Confirmation Date, (c) to resolve controversies and disputes regarding interpretation and implementation of the Amended Plan, (d) to enter orders in aid of or to interpret the Amended Plan, including, without limitation, appropriate orders (which may include contempt or other sanctions) to enforce the Amended Plan, and to protect the Debtors and any other entity having rights under the Amended Plan as may be necessary to implement the Amended Plan, (e) to correct any defect, cure any omission, or reconcile any inconsistency in the Amended Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Amended Plan, (f) to modify the Amended Plan as provided by applicable law, (g) to determine all questions and disputes regarding title to assets of the Debtors or of the Debtors' Estates, as may be necessary to implement the Amended Plan,(h) to enforce and to determine actions and disputes concerning the discharge, releases and injunctions contemplated by the Amended Plan and to require Persons holding liens to release liens in compliance with the Amended Plan, (i) to enter any order pursuant to Bankruptcy Code section 505 or otherwise to determine any tax of the Debtors, whether before or after Confirmation, including to determine any and all tax effects of the Amended Plan, (j) to enter a

final decree closing the Case and making such final administrative provisions for the Case as may be necessary or appropriate, and (k) to hear and determine any action or controversy by the Oversight Agent or holders of Class 6 Claims.

p. **Executory Contracts and Unexpired Leases.**

The Amended Plan provides that each executory contract or unexpired lease of the Debtors that has not previously been rejected is deemed rejected except for those listed on Schedule 3, attached hereto.  The Debtors are assuming three agreements with Verizon relating to New Jersey local, PICC, and Special Projects, services and facilities, with Verizon and will make cure payments as indicated on Exhibit 3.  Verizon has not informed the Debtors whether it agrees with the cure payments, and the cure payments could exceed the amounts indicated on Exhibit 3.  With respect to the Billing Services Agreement with Verizon, it is the Debtors' position that such agreement has terminated according to its terms and the Debtors have entered into a new agreement.  It is Verizon's position that the Debtors are required to cure the defaults existing under the Billing Services Agreement.  With respect to the agreement with Verizon for local services and facilities in New York, it is the Debtors' position that they have entered into a new postpetition agreement for different New York services and facilities at different rates with Verizon.  It is Verizon's position that the Debtors are required to cure the defaults existing for New York local services and facilities.

Nothing in the Amended Plan, any attachment thereto, any document executed or delivered in connection with the Amended Plan, shall be deemed to create any obligation or liability with respect to any executory contract or unexpired lease on the part of the Debtors or other Person that is not presently liable thereon.  Any Claim for damages arising from the rejection, under the Amended Plan, of an executory contract or unexpired lease, must be filed

NEWY1:3000826.v7  9/3/02
306691.1

with the Court within thirty (30) days after the mailing of notice of Confirmation or be forever barred from receiving any distribution under the Amended Plan.

### q.     **Claims Arising from Certain Judgments.**

A Claim that arises in favor of an entity as a result of a judgment in favor of the Debtors for the recovery of money or property from that entity or avoiding the entity's interest in property, must be filed within thirty (30) days after the later of (a) the date the judgment becomes final or (b) the mailing of notice of Confirmation.

### r.     **Retention and Enforcement of Claims.**

The Amended Plan provides that the Reorganized Debtor will retain and may enforce all claims, interests, and causes of action of the Debtors' Estates which have not been settled or adjudicated prior to the Effective Date, including without limitation all claims and causes of action to recover money or property and to determine the validity, extent or priority of a lien or other interest in property whether arising under bankruptcy law or nonbankruptcy law and whether or not commenced prior to the Confirmation Date. All such claims and causes of action of the Debtors against any Person, at its option, may be used to offset any payment or distribution due to such Person under the Amended Plan.

### s.     **Objections to Claims and Interests.**

The Amended Plan provides that the Debtors and any other party in interest may object to the allowance of any Claim or interest before, on, or after the Confirmation Date of the Amended Plan. As soon as practicable, but in no event later than ninety (90) days after the Effective Date, the Debtors and any other party in interest may object to the allowance of any Claim or Interest. Nothing contained herein, however, shall limit the Reorganized Debtor's right to object to Claims or Interests, if any, filed or amended more than ninety (90) days after the Effective Date.

NEWY1:3000826.v7  9/3/02
306691.1

t.    **Distributions Under the Amended Plan.**

The Amended Plan includes a number of provisions governing distributions under the Amended Plan. These include the following:

(a)    Provisions for Distributions Pending Determination of Certain Claims for Income Taxes.

Notwithstanding any other provision of the Amended Plan and unless the Court orders otherwise, prior to making distributions on account of Allowed Claims, other than Administrative Claims and Tax Claims under the Amended Plan, the Debtors will make adequate provision for the satisfaction of Claims for income taxes entitled to treatment as administrative expenses; provided, however, that unless otherwise ordered by a court, the Debtors will have no obligation to withhold funds, designate reserves, or make other provisions for the payment of any Claims for taxes that have been disallowed by order of the Court.

(b)    No Distributions on Account of Claims that have not Become Allowed Claims.

Notwithstanding any other provision of the Amended Plan, no payment or distribution will be made with respect to any Claim that has not become an Allowed Claim, except that the entity responsible for distribution may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

(c)    Reserves for Claims that have not Become Allowed Claims.

Distributions on account of Claims that have not become Allowed Claims will be governed by the following provisions:

(i)     The Debtors will not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by a Final Order of the Court.

(ii)     Except as otherwise provided in the Amended Plan, the Debtors will not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by an Order of the Court that has not become a Final Order as of any applicable time for distribution under the Amended Plan, unless the Court orders otherwise or unless the Court's order of disallowance has been stayed.

(iii)     With respect to Claims that have not become Allowed Claims that are not governed by subparagraph (i) or subparagraph (ii) above, at each applicable time for distribution, a sufficient amount of the consideration to be distributed under the Amended Plan shall be withheld or reserved to allow for a distribution on account of the face amount of such Claims, pro rata, in accordance with the Class of such Claims, provided, however, that the Debtors shall distribute consideration attributable to any undisputed portion and shall withhold the remainder. The Court may, after notice and a hearing (as defined in Bankruptcy Code section 102), fix a lesser amount than the face amount as the amount on account of which consideration shall be withheld. In the case of Claims not stating an amount, the Debtors or any holder of such Claims may

- 36 -

request that the Court, after notice and a hearing (as defined in Bankruptcy Code section 102), determine an amount. Consideration withheld pursuant to this subparagraph will be held in a segregated, interest-bearing fund or funds. Such consideration will be released when and if Claims are allowed for less than the amount in reserve and distributed to creditors in accordance with the Amended Plan.

        (d)      <u>Persons Responsible for Distribution of Amended Plan Consideration.</u>

The Debtors will disburse all consideration to be distributed under the Amended Plan.

    u.      **Unclaimed Cash.**

If any Person entitled to receive Cash under the Amended Plan cannot be located on the date a distribution under the Amended Plan is due, such Cash will be set aside and held in a segregated, interest-bearing fund to be maintained by the entity responsible for such distributions under the Amended Plan. If such Person is located within ninety (90) days of the Effective Date, such cash, together with any interest earned thereon, will be paid or distributed to such Person. If such Person cannot be located within ninety (90) days of the Effective Date, any such Cash and accrued interest thereon may be distributed to creditors holding Allowed Claims. Nothing contained in the Amended Plan will require the Debtors to attempt to locate such Person. It is the obligation of each Person claiming rights under the Amended Plan to keep the Debtors advised of its current address by sending written notice of any changes to the Debtors.

NEWY1:3000826.v7 9/3/02
306691.1

### v. **Unnegotiated Items.**

Checks or drafts issued to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person will be deemed nonnegotiable thereafter.

### w. **Fractional Dollars.**

Any other provision of the Amended Plan notwithstanding, payments of fractional dollars will not be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down).

### x. **Distribution Dates.**

Whenever any distribution to be made under the Amended Plan is due on a day other than a Business Day, the distribution will be made instead, without penalty or interest, on the next Business Day. The Court will retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and notice to affected parties.

### y. **Orders Respecting Claims Distribution.**

The Amended Plan provides that, after Confirmation of the Amended Plan, the Court will retain jurisdiction to enter orders in aid of consummation of the Amended Plan respecting distributions under the Amended Plan and to resolve any disputes concerning distributions under the Amended Plan.

### z. **Modification of Amended Plan.**

The Amended Plan provides that the Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Amended Plan with the consent of the Committee.

NEWY1:3000826.v7 9/3/02
306691.1

aa. **Severability.**

The Amended Plan provides that, should any provision in the Amended Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, that determination will in no way limit the enforceability and operative effect of any and all other provisions of the Amended Plan.

bb. **Successors and Assigns.**

The Amended Plan provides that the rights, benefits, and obligations of any Person named or referred to in the Amended Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

D. **Conditions for Confirmation of the Amended Plan.**

1. **Conditions to Confirmation.**

Confirmation of the Amended Plan shall not occur unless all of the requirements of the Bankruptcy Code for Confirmation of the Amended Plan with respect to the Debtors shall have been satisfied. In addition, Confirmation shall not occur, the Amended Plan shall be null and void and of no force and effect, and the Amended Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Amended Plan.

2. **Waiver and Nonfulfillment of Conditions to Confirmation.**

Nonfulfillment of any condition to confirmation of the Amended Plan may be waived only by the Debtors with the consent of the Committee. In the event that the Debtors determine that the conditions to the Amended Plan's Confirmation which it may waive cannot be satisfied and should not, in its sole discretion, be waived, the Debtors may propose a new Amended Plan, may modify the Amended Plan as permitted by law, or may request other appropriate relief.

- 39 -

3. **Conditions to Effective Date.**

The following are conditions precedent to the Effective Date of the Amended Plan, and the Amended Plan will be null and void and of no force and effect and will be deemed withdrawn unless they are each satisfied or waived in accordance with the Amended Plan:

(a) The Court shall have entered an order confirming the Amended Plan in accordance with chapter 11 of the Bankruptcy Code which shall have become a Final Order; and

(b) No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made and still be pending.

(c) Execution of the Shareholders Agreement, in form satisfactory to the Committee.

4. **Waiver and Nonfulfillment of Conditions to Effective Date.**

Nonfulfillment of any condition precedent to the Effective Date may be waived only by the Debtors, with the consent of the Committee. In the event that the Debtors determine that the above conditions to the Amended Plan's Effective Date cannot be satisfied and should not, in its sole discretion, be waived, the Debtors may propose a new Amended Plan, may modify the Amended Plan as permitted by law, or may request other appropriate relief.

5. **Confirmation Order Provisions for Pre-Effective Date Actions.**

The Confirmation Order will empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable the Debtors to implement the provisions of the Amended Plan and satisfy all other conditions precedent to the effectiveness of the Amended Plan.

## E.        Risk Factors in Connection with the Amended Plan

The Debtors believe that there exist no risk factors in connection with confirmation of the
Amended Plan other than the fact that the level of Allowed Claims and Allowed Administrative
Claims may exceed the Debtors' estimates and the pro rata distribution to be received by holders
of Allowed Unsecured Claims may be less than the Debtors' estimates.

## VI.

## STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION

The Amended Plan must be approved by the Court after a confirmation hearing.

## A.        Elements of Confirmation.

In order for the Amended Plan to be confirmed, the Bankruptcy Code requires that the
Court determine that the Amended Plan complies with the technical requirements of chapter 11
of the Bankruptcy Code and that the disclosures concerning the Amended Plan have been
adequate and have included information concerning all payments made or promised in
connection with the Amended Plan and the Case.  The Bankruptcy Code also requires that: (i)
the Amended Plan be accepted by the requisite votes of Creditors, except to the extent that
confirmation despite dissent is available under section 1129(b) of the Bankruptcy Code; (ii) the
Amended Plan is feasible (that is, there is a reasonable probability that the Debtors will be able
to perform their obligations under the Amended Plan without needing further financial
reorganization not contemplated by the Amended Plan); and (iii) the Amended Plan is in the
"best interests" of all Creditors and equity security holders (that is, Creditors and equity security
holders will receive at least as much under the Amended Plan as they would receive in
hypothetical liquidation cases under chapter 7 of the Bankruptcy Code).  To confirm the
Amended Plan, the Court must find that all of the above conditions are met, unless the applicable

provisions of section 1129(b) of the Bankruptcy Code are employed to confirm the Amended Plan, subject to satisfying certain conditions, over the dissent or deemed rejections of Classes of Claims or Interests.

**B.      Best Interests of Creditors.**

In order to confirm an Amended Plan the Court must determine that the Amended Plan is in the best interests of all Creditors and equity security holders impaired by the Amended Plan who have not accepted the Amended Plan. The "best interests" test requires that the Court find either that all members of an impaired Class of Claims or interests have accepted the Amended Plan or that the Amended Plan will provide each such member a recovery that has a value at least equal to the value of the distribution that each such member would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To calculate what members of each impaired Class of creditors and equity security holders would receive if the Debtors were liquidated, the Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtors' assets by a chapter 7 trustee. The liquidation value available to unsecured creditors would be reduced by, first, the Claims of secured creditors, if any, to the extent of the value of their collateral, and, then, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 and chapter 11 cases. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred in the chapter 11 case (such as compensation of attorneys, accountants, and other professionals) that are allowed in the chapter 7 case, litigation costs, and Claims arising from the operations of the estate during the pendency of the chapter 11 case. The

liquidation itself could trigger certain priority Claims and would accelerate other priority payments that otherwise would be due in the ordinary course of business. Those priority Claims would be paid in full out of the liquidation proceeds before the balance would be made available to pay general Claims or to make any distribution in respect of equity Interests, the liquidation value of the Debtors' assets is indicated in the financial projections, attached as Exhibit 4 hereto.

The Debtors believe that the Amended Plan is in the best interests of creditors and equity security holders because it provides Creditors with a greater recovery than if the Debtors were liquidated and the proceeds of such liquidation were used to pay Creditors. Please refer to this analysis for specific valuation and estimated recovery figures. Any liquidation or Amended Plan distribution analysis is, at best, highly speculative. To the extent that confirmation of the Amended Plan requires the establishment of hypothetical amounts for the value of assets or Claims and funds available to pay Claims, the Court will make those rulings.

### C. Feasibility of the Amended Plan.

In connection with confirmation of the Amended Plan, the Court must determine that confirmation of the Amended Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Amended Plan, unless such liquidation or reorganization is proposed in the Amended Plan. The Debtors believe that the Debtors will be able to perform their obligations under the Amended Plan without the need for further financial reorganization and are providing financial projections, attached hereto as Exhibit 4.

### D. Confirmation of the Amended Plan if One or More Classes Do Not Accept.

Certain provisions of the Bankruptcy Code permit confirmation of an Amended Plan of reorganization even if a class or classes do not accept the Amended Plan so long as one impaired Class votes to accept the Amended Plan. These provisions, set forth in Bankruptcy Code section

1129(b), allow for the confirmation of the Amended Plan even though some classes vote to or are deemed to reject the Amended Plan, provided that the Amended Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.

An Amended Plan is fair and equitable as to a class of secured claims that rejects an Amended Plan if the Amended Plan provides either (a) that the holders of claims included in the rejecting class (i) retain the liens securing those claims, whether the property subject to those liens is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of such claims and (ii) receive, on account of such claims, deferred cash payments totaling at least the allowed amount of such claims, possessing a value, as of the effective date of the Amended Plan, of at least the value of the holder's interest in the estate's interest in such property; or (b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of the sale, and that such liens on proceeds will be treated in accordance with clause (a)(i) of this subparagraph; or (c) for the realization by such holders of the indubitable equivalent of their claims.

An Amended Plan is fair and equitable to a class of unsecured claims that rejects or is deemed to reject the Amended Plan, if the Amended Plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the Amended Plan, equal to the allowed amount of such claim, or (b) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

**IF THE OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE COURT TO**

**RULE THAT THE AMENDED PLAN MAY BE CONFIRMED NOTWITHSTANDING ANY VOTE OF SECURED OR UNSECURED CREDITORS TO REJECT THE AMENDED PLAN ON THE GROUND THAT THE SECTION 1129(b) REQUIREMENTS HAVE BEEN SATISFIED.**

The Bankruptcy Code provides that because shareholders of the Debtors will not receive or retain any property under the Amended Plan on account of their Interests in the Debtors, Class 7 is deemed not to have accepted the Amended Plan and, accordingly, ballots for voting on the Amended Plan will not be distributed to holders of Interests. Notwithstanding this deemed rejection of the Amended Plan, the Amended Plan may still be confirmed as long as the Amended Plan provides: (a) for each holder of an Interest included in the rejecting Class to receive or retain on account of that Interest property that has a value, as of the Effective Date of the Amended Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such Interest, or (b) that the holder of any Interest that is junior to the interest of such Class will not receive or retain under the Amended Plan on account of such junior Interest any property. Because shares of the Debtors are expunged by the Amended Plan and because no junior Interests exist, the Debtors believe the Amended Plan may be confirmed notwithstanding the deemed rejection of Class 7 Interests.

**IF OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE COURT TO RULE THAT THE AMENDED PLAN MAY BE CONFIRMED NOTWITHSTANDING THE DEEMED REJECTION OR ANY VOTE TO REJECT THE AMENDED PLAN BY SHAREHOLDERS OF THE DEBTORS.**

### E.     Hearing on Confirmation of the Amended Plan.

At the time and place given in the notice served with this Disclosure Statement, the Bankruptcy Court will hold a hearing to determine if the Amended Plan has been accepted by a requisite number of Claims and Interests and whether the other requirements for Confirmation of the Amended Plan have been satisfied.

**CREDITORS AND SHAREHOLDERS ARE NOT REQUIRED TO ATTEND THE HEARING ON CONFIRMATION UNLESS THEY HAVE EVIDENCE OR ARGUMENT TO PRESENT TO THE COURT CONCERNING THE MATTERS TO BE ADDRESSED AT THE HEARING ON CONFIRMATION.**

## VII.

## CERTAIN FEDERAL INCOME
## TAX CONSEQUENCES OF THE AMENDED PLAN

The Disclosure Statement does not discuss any aspects of federal income taxation that may be relevant to a particular creditor in light of its personal investment circumstances or to certain creditors subject to special treatment under the federal income tax laws (for example, life insurance companies, tax-exempt organizations, foreign corporations and individuals who are not citizens or residents of the United States) and does not discuss any aspects of state, local or foreign taxation.  The Disclosure Statement also does not discuss the tax consequences to current shareholders of the Debtors who will not receive any distribution under the Amended Plan in exchange for their equity Interests and, accordingly, creditors and shareholders should consult their own tax advisors regarding their ability to recognize a loss for tax purposes and any other tax consequences to them of the Amended Plan.

**DUE TO A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY AND INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST**

WITH RESPECT TO VARIOUS TAX CONSEQUENCES OF THE AMENDED PLAN.
FOR THE FOREGOING REASONS CREDITORS AND SHAREHOLDERS ARE
URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO SPECIFIC TAX
CONSEQUENCES (FEDERAL, STATE AND LOCAL) OF THE AMENDED PLAN.

## VIII.

## EFFECTS OF AMENDED PLAN CONFIRMATION

A confirmed Amended Plan leaves the holders of Claims with new rights as set forth in
the confirmed Amended Plan.  Therefore, in the event of a default after Confirmation, a holder of
a Claim may pursue its remedies under the Amended Plan.  Some rights may remain with
holders of Claims after the provisions of the confirmed Amended Plan have been carried out.
The automatic stay of Bankruptcy Code section 362(a) as to actions against the Debtors remain
in effect until the Effective Date of the Amended Plan.  Thereafter, all parties in interest will be
enjoined from taking any action inconsistent with the Amended Plan.

### A.    Vesting and Liens.

Except as otherwise expressly provided in the Amended Plan or the Confirmation Order,
property of the Debtors' Estates will vest in the Reorganized Debtor, free and clear of all Claims,
liens, encumbrances, charges and other Interests of creditors and Interest holders.

### B.    Releases from Claims and Liabilities.

1.    Except as otherwise provided in the Amended Plan, or with respect to any Person
in any document executed by such Person contemplating the transactions described in the
Amended Plan, the Debtors, including their respective current and former officers, directors,
shareholders and their respective employees and agents, and their respective counsel and
advisors, together with all of their current and former officers and directors (collectively, the
"Amended Plan Releasees"), are released and discharged from any and all claims or liabilities

- 47 -

arising from actions taken in their capacity as current or, if applicable, former officers, directors, shareholders, employees, agents, counsel and advisors of the Debtors, and from any and all claims, obligations, rights, causes of action and liabilities relating to the Debtors, the Reorganization Case or the Amended Plan. Such Amended Plan Releases shall not release the current and former officers and directors from any liability arising under: (i) the Internal Revenue Code, or any state, city or municipal tax code, (ii) the environmental laws of the United States, any state, city or municipality, or (iii) any criminal laws of the United States, any state, city or municipality.

2.      Except as expressly provided otherwise in the Amended Plan, the Amended Plan Releasees are released and discharged from any and all claims, obligations, rights, Causes of Action and liabilities which any holder of a Claim or Equity Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission or other occurrence taking place on or at any time prior to the Effective Date in any way relating to the Debtors, the Reorganization Case or the Amended Plan.

3.      Each holder of a Claim shall be deemed to have agreed to the foregoing provisions of the Amended Plan, shall be bound thereby, by reason of, among other things, its acceptance of the Amended Plan and its receipt of any distributions under the Amended Plan.

## C.      Limitation of Liability.

The Amended Plan provides that the Debtors and its directors, officers, trustees, employees and professionals (acting in such capacity), and the Committee and its members, agents and professionals shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Amended Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document

NEWY1:3000826.v7  9/3/02
306691.1

created or entered into, or any other act taken or omitted to be taken in connection with the Amended Plan or this Case; provided, however, that the foregoing provisions shall have no effect on the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

<h2 style="text-align:center">IX.</h2>

<h2 style="text-align:center">ALTERNATIVES TO CONFIRMATION<br>AND CONSUMMATION OF THE AMENDED PLAN</h2>

### A.  Liquidation Under Chapter 7.

If no chapter 11 Amended Plan can be confirmed, the chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors.  A discussion of the effect that a chapter 7 liquidation would have on the recovery of holders of Claims and Interests set forth in Section VI(B) of this Disclosure Statement.  The Debtors believe that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Amended Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals during such liquidation.

### B.  Alternative Amended Plan of Reorganization.

If the Amended Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different Amended Plan of reorganization.  During the course of negotiation of the Amended Plan, the Debtors explored various other alternatives and concluded that the Amended Plan represented the best alternative to protect the interests of creditors, patients and other parties in interest.  The Debtors have not changed their conclusions.

The Debtors believe that the Amended Plan enables the Debtors to continue the servicing of its customers in the form of the Reorganized Debtor, and allows creditors to realize the highest recoveries under the circumstances.

## X.

## <u>CONCLUSION AND RECOMMENDATIONS</u>

The Debtors urge all creditors entitled to vote on the Amended Plan to vote to accept the Amended Plan and to evidence such acceptance by immediately returning their properly completed ballots to the appropriate voting agent as set forth on the ballots within the time stated in the notice served with this Disclosure Statement.

Dated as of this 10th day of September, 2002

**EMPIRE ONE TELECOMMUNICATIONS, INC., SONUS COMMUNICATIONS, INC., EOT TELECOMMUNICATIONS OF CANADA, INC., EMPIRE ONE POWER, INC., AND SONUS COMMUNICATION HOLDINGS, INC.**

By: ___/s/Todd Sunko_____

NEWY1:3000826.v7  9/3/02
306691.1